**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **v.** | ) | **Criminal No. 08-10036-DPW** |
| | ) | |
| | ) | |
| **WINSTON MCGHEE** | ) | |

**GOVERNMENT'S SENTENCING MEMORANDUM**

The United States, by its undersigned attorneys, respectfully submits this sentencing memorandum to address relevant issues in advance of the defendant Winston McGhee's sentencing, scheduled for September 5, 2008.

**I.   SENTENCING GUIDELINES ANALYSIS**

McGhee's conviction of possession with intent to distribute makes him a career offender.  However, this finding will require the Court to answer a question of first impression in the First Circuit: whether a conviction on a youthful offender indictment constitutes an adult conviction and therefore a predicate offense under U.S.S.G. § 4B1.1.  The Massachusetts youthful offender statute, the facts of McGhee's prior case, and the treatment by federal courts of comparable laws in other states demonstrate that McGhee's conviction is an adult conviction for career offender purposes.

1

A.      __Career Offender Guideline__

Pursuant to U.S.S.G. § 4B1.1(a), a "defendant is a career offender if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense."

McGhee meets these criteria: (1) he was 22 years old at the time of the instant offense (date of birth: March 24, 1984); (2) Count One, possession with intent to distribute, is a controlled substance offense, U.S.S.G. § 4B1.2(b); and (3) McGhee has two predicate felony convictions pursuant to § 4B1.2(c):

- McGhee was convicted on March 29, 2002, of assault and battery with a dangerous weapon in Dorchester District Court;[1] and

- McGhee was convicted on October 11, 2000, on a youthful offender indictment of assault with a dangerous weapon and armed robbery in Roxbury Juvenile Court.[2]

---

[1]A certified copy of the McGhee's conviction is attached as Exhibit A.

[2]A certified copy of the McGhee's conviction is attached as Exhibit B.

The career offender guideline defines a prior felony conviction as an adult conviction.  § 4B1.2 (cmt. n. 1).  The youthful offender conviction took place in juvenile court; however, a "conviction for an offense committed prior to age eighteen is an adult conviction if it was classified as an adult conviction under the laws of the jurisdiction in which the defendant was convicted."  Id.  Regardless of nomenclature, Massachusetts treats youthful offender convictions as adult convictions.

**B.    Massachusetts Youthful Offender Statute.**

The youthful offender statute essentially treats an offender under the age of 18 as an adult, while providing the court with greater latitude in sentencing.  M.G.L. c. 119, § 52 *et seq.*  The 1996 statute was designed "to reduce or to eliminate certain protections previously available to all juvenile offenders in an effort to address a growing concern about violent crimes committed by juveniles."  Commonwealth v. Connor C., 432 Mass. 635, 641 (2000), quoting Commonwealth v. Clint C., 430 Mass. 219, 227 (1999).  Limited to serious felony offenses involving violence, firearms, or repeat offenders, the youthful offender statute gives the prosecutor the option to prosecute the case under the heightened procedural requirements of an adult conviction, so that the court upon conviction may have the ability to sentence the offender to state prison.  Nevertheless,

3

the court also retains the discretion to sentence the offender to

DYS custody or adult probation, in light of the greater efforts

at rehabilitation traditionally accorded to offenders under age

18.   See R.L. Ireland, Juvenile Law § 2.2, p. 425 (2d ed. 2006).

Massachusetts defines a "youthful offender" as

> [a] person who is subject to an adult or juvenile
> sentence for having committed, while between the ages
> of fourteen and seventeen, an offense against a law of
> the commonwealth which, if he were an adult, would be
> punishable by imprisonment in the state prison, and (a)
> has previously been committed to the department of
> youth services [DYS], or (b) has committed an offense
> which involves the infliction or threat of serious
> bodily harm in violation of law, or (c) has committed a
> [firearm offense in] violation of paragraph (a), (c),
> or (d) of section ten . . . of chapter two hundred and
> sixty-nine [certain firearms offenses].

M.G.L. c. 119, § 52, as amended through St.1996, c. 200, § 1.  A

youthful offender prosecution requires indictment in the Superior

Court by an "adult" grand jury.  Significantly, the prosecution

must present sufficient evidence to find probable cause as to

elements of the underlying offense as well as the elements of

M.G.L. c. 119, § 54 (i.e., the offender's age and either previous

committment to DYS, serious bodily harm, or a firearm offense).

See Commonwealth v. McCarthy, 385 Mass. 160, 163 (1982).  In

other words, the grand jury procedure is the same as for an adult

offense, with the addition of certain "jurisdictional

requirements."  Ireland, supra, § 2.4, p. 428.[3]

---

[3]At trial the prosecution must prove the elements of the
underlying offense and jurisdictional elements beyond a

A returned indictment is then "promptly" remitted to the
Juvenile Court, where such indictment is to be tried.
Commonwealth v. Russ R., 433 Mass. 515, 518 (2001), citing M.G.L.
c. 263, § 4.  In common with juvenile delinquency proceedings, a
youthful offender defendant has the right to a jury trial; the
presiding juvenile court judge has all of the powers accorded to
a judge of the superior court in a criminal case, including the
authority to hear motions and issue discovery orders;[4] and a
trial by jury in juvenile court applies the same procedures as in
a trial by jury in the superior court.  M.G.L. c. 119, §§ 54,
55A, 56(d), 56(e).  However, in contrast to juvenile delinquency
cases but in common with adult criminal cases, a youthful
offender defendant is tried by a jury of 12, not 6.  M.G.L. c.
119, § 55A.  Likewise, the courtroom and records are open and
available to the public, not closed.  M.G.L. c. 119, § 60A.

Upon conviction on a youthful offender indictment, a judge
shall impose, of three possible dispositional options, the one

---

reasonable doubt.  Because the youthful offender statute
increases the maximum punishments otherwise available to
defendants under age 18, this procedure thereby complies with
Apprendi v. New Jersey, 530 U.S. 466 (2000).  See Ireland, supra,
§ 2.5, p. 430.

[4]A juvenile court cannot grant immunity to a witness because the
Massachusetts statute, amended after the youthful offender
statute, restricts that power to the Supreme Judicial, Appeals
and Superior Courts.  Russ R., 433 Mass. at 522.  However, a
witness immunized in another court is protected against
incrimination by testimony in the Juvenile Court.  Commonwealth
v. Austin A., 450 Mass. 665, 669 (2008).

that best protects the "present and long-term public safety."

M.G.L. c. 119, § 58.   The most severe option grants a judge

authority to punish the defendant by "a sentence provided by

law," M.G.L. c. 119, § 58 (a), in other words the punishment that

the juvenile would receive were he an adult, which includes a

term of imprisonment to state prison.[5]   Alternatively, the judge

may order a "combination sentence," which includes the commitment

of the defendant to the custody of DYS until twenty one, and an

adult sentence to a house of correction or to state prison as

provided by law, subject to suspension and a term of probation.

Id.   Finally, a judge may commit the juvenile to DYS until he

reaches twenty one, the least severe option.   Id.; see also

Commonwealth v. Lucret , 58 Mass. App. Ct. 624, 626 (2003).

Massachusetts courts have classified youthful offender

convictions as adult convictions:

> [B]y being found guilty by the jury of the charges in
> the youthful offender indictment and by the jury having
> been presented with evidence sufficient to establish
> the defendant as a youthful offender, *the defendant has
> been found guilty of a crime.*   The Legislature has
> simply provided discretion to the judge to treat
> youthful offenders who are indicted and convicted of a
> crime within the juvenile justice system.   *Such
> treatment does not render defendant's conviction
> noncriminal.*

---

[5]By definition, every youthful offender conviction includes as a
maximum punishment a term of imprisonment for a term of years in
state prison, because the statute is triggered only by an
underlying crime which would be punishable in state prison if
committed by an adult.   M.G.L. c. 119, § 52.

<u>Commonwealth v. Hampton</u>, 64 Mass. App. Ct 27, 34 n. 10 (2005)

(emphasis added); <u>accord</u> <u>Commonwealth v. Ogden O.</u>, 448 Mass. 798,

804 n. 5 (2007) ("Once a juvenile is treated as a youthful

offender, he is no longer given the protections and privileges

afforded to delinquent children") (quotation and citation

omitted); <u>Commonwealth v. Furr</u>, 58 Mass. App. Ct. 155, 158 (2003)

(court ruled that youthful offender adjudication counted as a

conviction for use in Massachusetts armed career criminal act,

referring to it as a "form of aggravated juvenile delinquency").[6]

### C.    <u>McGhee's Armed Robbery</u>

The facts of McGhee's armed robbery demonstrate that he

committed a serious crime, worthy of the adult sentence that he

received.   On October 3, 1999, at approximately 4:00 am, Freddy

Smith, Jr., who was a student at Fisher College, left his home on

Columbia Road in Dorchester for the Store 24.[7]   A blue, late

model Toyota Corolla drove past Smith and stopped just ahead of

him.   Two men – McGhee and George Deeble – then exited the

---

[6]Even if the Court concluded that Massachusetts did not treat a
youthful offender conviction as an adult sentence, such a
conclusion would not bind the Court here.   <u>See</u> <u>United States v.
Matthews</u>, 498 F.3d 25, 34 (1st Cir. 2007) ("States enjoy a broad
range of flexibility in choosing how they will treat those who
offend their laws.   But they may not dictate how the federal
government will vindicate its own interests in punishing those
who commit federal crimes.") (citations omitted).

[7]These facts are taken from Smith's testimony to the grand jury
(pp. 1-12).   A certified copy of the grand jury minutes is
attached as Exhibit C.

passenger side of the car and faced Smith.  Deeble carried a
shotgun.  As he cocked the shotgum, he said "Don't run.  Don't
ever run."  McGhee told Smith "Come here".  When Smith resisted,
McGhee and Deeble approached Smith, as Deeble kept the shotgun
pointed at Smith's face, and went through his pockets.  McGhee
and Deeble took $36, a pack of cigarettes, two silver chains from
his neck, his bracelet, watch and silver pinky ring.  McGhee and
Deeble then got back into the Toyota, which drove off.  After
Smith reported the robbery, police tracked down the Toyota and
arrested McGhee and Deeble.

On December 23, 1999, the grand jury for Suffolk County
Superior Court returned youthful offender indictments charging
McGhee with armed robbery and assault with a deadly weapon.  The
indictments were filed in the Roxbury Juvenile Court.  On
November 13, 2000, McGhee tendered a plea on both counts and was
found to be a youthful offender by the court.  McGhee received a
combined sentence covering both counts: adult probation until
March 24, 2005 (his 21st birthday) on the armed robbery count;
and committment to DYS custody until age 21 on the assault count,
which was the minimum sentence.  On December 10, 2002, after the
court found that he had violated the probation that he had
received for armed robbery, for the second time, he was sentenced
to MCI-Cedar Junction for two years to two years and one day.

### D.   <u>**Federal Courts' Treatment of Youthful Offender Statutes**</u>

McGhee's conviction bears all the characteristics of an adult conviction and McGhee enjoyed all the protections that the Constitution provides to adult defendants: he was indicted by a grand jury sitting in Superior Court, which found probable cause that he committed the adult crimes of armed robbery and assault with a deadly weapon (along with additional jurisdictional requirements).  McGhee was accorded the right to trial by a jury of twelve.  He had the right to file motions and to request discovery.  Had McGhee gone to trial, the prosecution would have had to prove beyond a reasonable doubt all the elements of armed robbery and assault with a deadly weapon, and the jurisdictional requirements.  His courtroom was open and the public had access to his records.  Finally, he received an adult sentence: probation and an eventual term in MCI-Cedar Junction.

 The only noteworthy distinction from an adult prosecution was that McGhee's took place in juvenile court.  Nevertheless, the juvenile court judge has "all the powers and duties which a justice sitting in the superior court department has".  M.G.L. c. 119, § 56.  Furthermore, McGhee's prosecution followed all the same procedures as those in Superior Court, with the added advantage (to McGhee) of expanded discretion in sentencing.  To draw any difference from this single distinction would place far too much emphasis on the name of the court and too little

emphasis on what goes on inside the building.[8]  Accordingly,

McGhee's youthful offender conviction is an adult conviction.

There is no First Circuit case addressing the question of

whether a Massachusetts youthful offender conviction is a

predicate offense for the career offender guideline.[9]  Other

circuits have treated youthful offender statutes similar to that

of Massachusetts as adult convictions for the purpose of career

offender predicates.  See, e.g., United States v. Parnell, 524

F.3d 166, 171 (2d Cir. 2008) (where defendant convicted before

age 18 for burglary and adjudged a youthful offender and where

substance of proceedings qualified as adult, district court

properly found an adult prior conviction for career offender

purposes); United States v. Jones, 415 F.3d 256, 260 (2d Cir.

2005) (allowing use of youthful offender adjudication to

calculate career offender base offense level where defendant had

pled guilty in adult forum and received over one year in adult

prison); United States v. Moorer, 383 F.3d 164, 168 (3d Cir.

2004) (after prior juvenile proceeding resulted in conviction as

an adult and sentence to a facility housing juveniles and young

---

[8]"What's in a name?  That which we call a rose/ By any other name
would smell as sweet;".  William Shakespeare, Romeo and Juliet,
act II, sc. ii.

[9] United State v. Peralta, 457 F.3d 169 (1st Cir. 2006), held that
the district court did not commit plain error when it counted a
New York youthful offender adjudication in finding the defendant
a career offender.  The First Circuit did not squarely address
the issue because the issue was not preserved.

adults, "[w]e hold that an adult conviction qualifies as a 'prior felony conviction' for purposes of career offender status whether that conviction results in an 'adult' or 'juvenile' sentence");[10] United States v. McNeil, 90 F.3d 298, 300 (8th Cir. 1996) (where defendant was previously charged and convicted as adult, sentenced to three years' imprisonment but committed as a youthful offender, district court properly used conviction as a predicated offense under career offender guidelines); United States v. Nicolace, 90 F.3d 255, 258 (8th Cir. 1996) (sentence under federal youth corrections act counts as adult conviction for sentence under career offender guidelines); United States v. Carillo, 991 F.2d 590, 594 (9th Cir. 1993) (adult sentence termed any sentence imposed following conviction as an adult, even where offense was committed before age eighteen, defendant sentenced to juvenile facility, and sentence was indeterminate); United States v. Pinion, 4 F.3d 941, 943 (11th Cir. 1993) (to determine whether a defendant was convicted as an adult, court should look to "the nature of the proceedings, the sentences received, and the actual time served"; conviction counted where defendant received adult sentence).

---

[10] Moorer rejected a Fourth Circuit case, United States v. Mason, 284 F.3d 555, 559 (4th Cir. 2002), which held that a conviction before age eighteen counts as a career offender predicate only if the defendant was both convicted and sentenced as an adult.

Similarly, other circuits have used youthful offender convictions to increase mandatory minimum sentences under 21 U.S.C. § 841.  See United States v. Sampson, 385 F.3d 183, 195 (2d Cir. 2004) (district court properly used defendant's prior adult conviction which had been converted to a youthful offender adjudication to increase his mandatory minimum drug sentence); United States v. Acosta, 287 F.3d 1034, 1037 (11th Cir. 2002) (treating youthful offender adjudication as conviction for enhancement "comports with the rationale behind youthful offender and juvenile deferral statutes," which are "meant to provide a second chance, not a technical legal advantage if, not having learned a lesson, they continue their criminal conduct") (citations omitted).

The First Circuit, while not addressing the present question regarding a career offender predicate, counts convictions secured when the defendant was under the age of 18 in computing criminal history, consistent with U.S.S.G. § 4A1.2(d).  See United States v. Unger, 915 F.2d 759, 763 (1st Cir. 1990), cert. denied, 498 U.S. 1104 (1991) (adjudications of "waywardness" of the defendant when under the age of 18 may be used in calculating criminal history categories under U.S.S.G. § 4A1.1); accord United States v. Driskell, 277 F.3d 150, 158 (2d Cir. 2002) (district court properly counted criminal history points for youthful offender adjudications committed when 17, examining "substance of the

prior conviction and resulting sentence rather than the label the
relevant state choses to place on it"); <u>United States v.
McDonald</u>, 991 F.2d 866, 872 (D.C. Cir. 1993) (although
defendant's juvenile conviction was "set aside", defendant had
been deemed a youthful offender and district court properly used
the juvenile conviction in calculating criminal history
category).

### E.    <u>Sentencing Guidelines Calculation</u>

The maximum sentence applicable to McGhee's conviction for
possession with intent to distribute cocaine base is twenty
years.  21 U.S.C. § 841(b)(1)(C).  Accordingly, his base offense
level as a career offender is **level 32**.  U.S.S.G. § 4B1.1(b)(C).
All career offenders are Criminal History Category VI.  U.S.S.G.
§ 4B1.1(b).  Accordingly, McGhee's advisory sentencing guidelines
range is **210 to 262 months**.

### II.  <u>U.S.C. § 3553 FACTORS</u>

McGhee's advisory guidelines range (as calculated by the
government or in the PSR) exceeds his mandatory minimum sentence.
The government will therefore address the § 3553 factors to
demonstrate the appropriateness of a sentence at or near the low
end of the guidelines range.

### A.    <u>The Nature of the Offense</u>

The Court is familiar with the details of this case from the
testimony adduced at the suppression hearing and trial, repeated

in the undisputed portions of the PSR.  In fact, several factors
distinguish this case from the run of the mill crack cocaine
case.

McGhee engaged in a complicated and serious criminal
enterprise, requiring information, decisiveness, planning, and
investment.  First, McGhee, who lived in Dorchester, had to
decide not only to sell drugs, but to sell drugs on Martha's
Vineyard.  McGhee also must have had some information about drug
prices on Martha's Vineyard, where the prices were double those
in Boston.  Next, McGhee had to plan his trip to Martha's
Vineyard, which would have required ferry or plane reservations
and accomodations.  Finally, traveling to, and staying on,
Martha's Vineyard during the high season requires a significant
investment for a drug dealer, in travel costs, accomodations,
food – more than simply the cost of the drugs.  Thus, McGhee
stands in sharp contrast to the drug dealer that deals out of his
home, associates with other drug users in his neighborhood, or
sells drugs to supply his own addiction.  Instead, McGhee was an
enterprising, professional drug dealer.

The amount of drugs, 8.37 grams of crack cocaine,
underrepresents his involvement with crack cocaine.  The troopers
first learned that McGhee was on-island selling crack cocaine on
July 6, 2006, days before they arrested him.  When arrested,
McGhee still had a supply of crack cocaine that he intended to

14

sell.  It is clear that, regardless of the amount of drugs that he was eventually caught with, McGhee had already sold a supply of drugs and intended to keep selling on Martha's Vineyard.

In addition, McGhee appears to have taken the leading role in the enterprise that also involved Jordan Clement and her boyfriend, Calvin LNU.  McGhee and Calvin first appeared on-island after Clement had money problems.  Then, after Clement and Calvin left for Boston, McGhee continued to sell drugs by himself.  It is unlikely that Calvin and Jordan would have left their own supply of drugs with someone else; it is more likely the case that McGhee planned and coordinated the enterprise.

**B.   Characteristics of the Defendant**

McGhee has, as the PSR notes, a long criminal record, especially long for a young man.  This long record resulted from McGhee's refusal to take advantage of the opportunities for rehabilitation provided to him in less restrictive settings.  An examination of his record as a juvenile proves this point.[11]  He committed an assault and battery on September 28, 1999.  PSR ¶ 43.  He was arrested on October 3, 1999, for armed robbery and assault with a deadly weapon (the case that became his youthful offender conviction).  PSR ¶42.  Next he was arrested on November

---

[11]This information is contained in Part B of the PSR, Defendant's Criminal History (¶ 42, *et seq.*), supplemented by McGhee's DYS placement history, which is in the custody of the Probation Office.

18, 1999, for knowingly receiving stolen property.  PSR ¶ 53.  On
July 23, 2000, he was arrested for possession of a class D
controlled subtance (marijuana), which was eventually continued
without a finding and dismissed.  PSR ¶ 51.  Finally, he was
arrested on September 8, 2000, for possession of a class D
substance with intent to distribute.  PSR ¶ 44.  McGhee was not
placed in DYS custody until this last offense.  In other words,
he committed all of these crimes before he suffered any adverse
effects from being in custody.  McGhee's repeated infractions put
him into more custodial placements and, as a result of his own
behavior, he had less access to services or time with his own
family.

     Once in DYS care, McGhee continued his pattern of offense.
On three occasions, he was placed in his home while technically
remaining in DYS custody.  Each time, he violated his parole–
sometimes more than once per stay.  PSR ¶ 69.  For example, on
August 20, 2001, he was placed at home.  On October 29, 2001, he
was arrested for trespassing but was permitted to remain at home.
PSR ¶ 45.  Finally, on January 21, 2002, he was arrested for
assault and battery with a deadly weapon, resisting arrest, and
other offenses.  PSR ¶ 46.  After that, McGhee was no longer
placed at home.

     This pattern continued again: from March 8, 2002 to May 28,
2002, McGhee was in a house of corrections.  PSR ¶ 69.  He was

16

again (for the last time) permitted to return home, followed *fifteen days later* by another parole violation.  PSR ¶ 69.  This pattern ended when he was arrested for murder.  He remained in DYS custody but was also detained in jail pending trial and concurrently serving his sentence for parole violation in his youthful offender case.  Id.

McGhee also has a long history of violence.  Notwithstanding the murder case, which was dismissed on a motion of *nolle prosequi* several years after being indicted by the grand jury, McGhee has convictions or adjudications for armed robbery and assault with a deadly weapon (1999); assault and battery (1999); assault and battery with a deadly weapon (2002); and various firearm possession charges (2006).  When arrested in this case, McGhee also carried a knife.

Finally, McGhee has demonstrated a remarkable recidivism. All of the offenses described above took place while he was in and out of houses of correction and secure placements, leaving him short periods in which to commit so many crimes.  The events before and after his July 10, 2006, arrest in this case provide an especially glaring example.  He was detained pending trial on the murder charge until June 12, 2006, when he was released after his case's dismissal.  *Less than one month later*, he had planned this crime, traveled to Martha's Vineyard, committed it, and was

back in jail.[12]   He was released on bail from the state charges

(later dismissed after adoption here) on August 22, 2002.  PSR ¶

55.  *Again, less than one month later*, on September 18, 2002, he

was arrested on firearms charges.  PSR ¶ 47.  In these cases and

throughout his life, McGhee has not been deterred at all from

committing further crimes.

In short, McGhee is a dangerous, violent, repeat offender.

He was fortunate never to have to stand trial on the murder

charge.  Nevertheless, he continued to engage in other crimes at

every opportunity.  He requires a long prison sentence to impress

on him finally the seriousness and dangerousness of his actions,

and to deter others from the same crimes.

---

[12]McGhee reported to probation that he was released without any
pre-release programming or community supervision.  PSR ¶ 70.  He
probably did not receive pre-release programming because he was
not serving a sentence, but detained pending trial.  However, a
lack of pre-release programming does not excuse or explain his
decision to go to Martha's Vineyard to sell drugs less than a
month later.

### III. <u>CONCLUSION</u>

The government respectfully requests that the Court find that McGhee is a career offender and sentence him at or near the low end of the advisory guidelines range.  Although the amount of drugs involved here is modest, McGhee has demonstrated that he is a hardened criminal, dedicated to a life of crime.  A long sentence is necessary to deter him from, and protect against, future criminal conduct.

                                        Respectfully submitted,

                                        MICHAEL J. SULLIVAN
                                        United States Attorney


                                By:     /s/ Timothy E. Moran
                                        JOHN A. WORTMANN, JR.
                                        TIMOTHY E. MORAN
                                        Assistant U.S. Attorneys

Dated: September 3, 2008



<u>CERTIFICATE OF SERVICE</u>

I hereby certify that this Sentencing Memorandum and accompanying exhibits filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

                                By:     /s/ Timothy E. Moran
                                        TIMOTHY E. MORAN