```
              UNITED STATES DISTRICT COURT
               DISTRICT OF MASSACHUSETTS


UNITED STATES OF AMERICA    )
                            )
        v.                  )    CRIM. NO. 08-10036-DPW
                            )
WINSTON McGHEE              )
```

## MEMORANDUM IN AID OF SENTENCING AND MOTION FOR DOWNWARD VARIANCE

The defendant Winston McGhee respectfully submits this memorandum in aid of sentencing and motion for a downward variance to the court.  This sentencing follows Mr. McGhee's conviction after trial on one count of possession of more than five grams of cocaine base and one count of possession of less than five grams of cocaine base with the intent to distribute it. The defendant requests that this court grant a downward variance from the advisory guideline range and sentence Mr. McGhee to the mandatory minimum term of imprisonment, which is five years' incarceration.

## THE OFFENSE CONDUCT

Winston McGhee was arrested on the evening of July 10, 2006 in Oak Bluffs on Martha's Vineyard after Massachusetts State Police officers searched his hotel room and his person.  During the course of a body cavity search, officers removed a plastic bag containing just under 8 grams of crack cocaine from between his buttocks.  Mr. McGhee did not submit willingly to this search

1

of his person, and felt at the time that his rights had been violated by the police.[1]  Evidence was presented at the trial that Mr. McGhee made a sale of .49 grams of cocaine base to a civilian police cooperator.  Though Mr. McGhee did not testify, he took the position at trial that he did not make any such sale, and he maintains that he did not.

## THE DEFENDANT'S PERSONAL BACKGROUND

Winston McGhee is 24 years old.  He has spent nearly all of the last six years of his life in some form of confinement.  He was born in Boston to Yolanda McGhee; his father is Winston Lindo, and his parents were never married.  Winston was raised by his father and his step-mother, Penny Benders.  Drug and alcohol abuse were staples in Mr. McGhee's family.  Both his mother Yolanda and step-mother Penny were crack users; his father drank alcohol. PSR ¶¶66-67.  There was also regular domestic discord in the family: Yolanda made a habit of harassing the Lindo family, breaking into their home, causing fights and making trouble with Winston Lindo.  Mr. Lindo also fought with Penny.  In sum, the home situation was not at all conducive to the upbringing of normal, well-adjusted children.[2]  Perhaps predictably, Winston

---

[1] Though this court denied Mr. McGhee's motion to suppress the evidence obtained through this body cavity search, he continues to feel that the police acted improperly.

[2] According to the presentence report ("PSR"), Mr. McGhee also suffered from lead poisoning during his childhood. PSR, ¶84.

began showing signs of emotional and behavioral maladjustment at an early age.  By the age of 7 he was beginning to act out in school and had been referred to the Judge Baker Children's Center for psychological testing.  By the age of 11, he had been diagnosed with, and was being medicated for, ADHD and depression. PSR, ¶88. By this young age, Mr. McGhee had already been introduced to drugs: at age 9 his mother and her friends were on occasion giving him marijuana to smoke when he visited her. PSR, ¶92.

Mr. McGhee's first contact with the law was for an armed robbery at age 15 in late 1999.[3]  It is difficult to determine from documentation how much of the ensuing two years he spent outside of institutions because the documents yield somewhat inconsistent information.  For example, ¶69 of the PSR states that Mr. McGhee was only at home for 4 months between September 2000 and March 2005; however ¶97 states that between 2000 and 2002 he attended Baycove Academy in Brookline.  Mr. McGhee's own memory on this subject is not precise either.  It certainly cannot be denied that his adolescence was chaotic and dominated by institutional, as opposed to family, influences.  The record before the court shows Mr. McGhee to have a history of untreated drug addiction and emotional and behavioral disorders that have

---

[3] This is the case that the government incorrectly argues is a career offender predicate in its submission.

3

been treated only intermittently at best.

## GUIDELINES ISSUES

The defense does not take issue with the calculation of the offense level set out in the PSR.  However, counsel respectfully submits that in imposing sentence in this matter the court should not apply the two-level enhancement for the carrying of a dangerous weapon, as provided for in USSG §2D1.1(b)(1).  The facts revealed at trial make it reasonably clear that the knife recovered from Mr. McGhee was not used in connection with his activities on July 10, 2006.  The knife was never brandished. Mr. McGhee never made any attempt to use the knife in resisting the police before he was stripped and searched.  Thus, while the defendant acknowledges that he could not carry a burden of showing that his possession of the knife at issue here was "clearly improbabl[y]" connected to the offense,[4] nonetheless this court could appropriately exercise its discretion to vary downward from the advisory guideline range by two levels based on the facts at hand.

## RELEVANT CONSIDERATIONS UNDER 18 U.S.C. §3553(a)

18 U.S.C. §3553(a) dictates that a sentence shall be "sufficient but not greater than necessary [] to comply with the

---

See United States v. Anderson, 452 F.3d 87 (1st Cir. 2006), construing §2D1.1(b)(1)as requiring the defendant to prove that the weapon in question was not possessed in connection with the offense; United States v. Corcimiglia, 967 F.2d 724 (1st Cir. 1992)(same).

4

purposes set forth" in ¶2 of the statute.  An appropriate sentence reflects the seriousness of the offense, provides just punishment for the offense, promotes respect for the law, adequately deters criminal conduct, protects the public from the defendant's further crimes, and strives to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment.  18 U.S.C. §3553(a)(2).  Defense counsel would direct the Court's attention to certain specific characteristics of Mr. McGhee's.

A.          The Defendant's Need For Mental Health
            <u>Treatment And Drug Rehabilitation</u>

Mr. McGhee has a long-standing dependence on cocaine, marijuana, opiates, and alcohol. PSR, ¶¶ 91-95.  The facts of this case, and the jury's verdict, indicate that Mr. McGhee is a heavy cocaine user.  The marijuana found on his person was certainly for his personal use.  For all of his history of institutionalization, he has never been offered any treatment for his drug dependence. PSR, ¶96.  Likewise, Mr. McGhee has serious emotional disorders that have required medication in the past.  There is no reason to believe that these problems do not still plague him and influence his behavior.  He is certainly in need of mental health counseling and medication.  If Mr. McGhee is ever to achieve any semblance of a normal life after his incarceration and supervised release, these twin problems will have to be addressed.  Counsel urges this Court to recommend that

the Bureau of Prisons place Mr. McGhee in a residential substance abuse treatment program, pursuant to 18 U.S.C. §3621(e), during his confinement.

Any risk of Mr. McGhee's being a danger in the future can only be countered by treatment, rehabilitation, and a careful reintroduction back into society. Cf. PSR ¶138  This cannot be accomplished by a long prison sentence.  The government recommends warehousing Mr. McGhee as a way to mitigate his possible dangerousness.  Defense counsel counters that this is not a reasonable answer to the problem the Court is confronted with here.

B.     Prior Incarceration For Murder Before Nolle Prosequi

After being arrested for murder, Mr. McGhee's juvenile probation was revoked, and on December 10, 2002 he was sentenced to two years and one day at Cedar Junction. PSR, ¶42.  Taking that sentence on its face, the sentence expired on December 10, 2004.  Mr. McGhee remained in pretrial custody until June 12, 2006, when the murder case was nolle prossed.[5]  The time between the expiration of his juvenile jail sentence and his release from pretrial detention is so-called "dead time."  There is no provision under federal statutes for this time in custody to be credited by the Bureau of prisons toward any sentence imposed by

---

[5] The PSR indicates that Mr. McGhee continued to be held in an adult jail on his juvenile commitment until March 24, 2005. This discrepancy will be addressed in court.

6

this Court.[6]  In order to achieve some degree of fairness for Mr. McGhee, the Court should vary downward from the advisory guideline range to compensate the defendant for the time he spent incarcerated on the murder case.  This is a period of approximately 18 months.

### SENTENCING RECOMMENDATION

Counsel asks this Court to sentence Mr. McGhee to the mandatory minimum sentence of five years, concurrent with the state sentence he is now serving.  See USSG §5G1.3(c), PSR ¶116.  Such a sentence takes into account the mitigating factors that have been identified in this memorandum and is reasonable in light of the nature of the offense and other factors set out in §3553(a).  Counsel also asks that no fine be imposed, as Mr. MrMcGhee has no means with which to pay a fine.

        Respectfully submitted

        By his attorney,

        /s/ Syrie D. Fried
        Syrie D. Fried
          B.B.O. # 555815
        Federal Defender Office
        408 Atlantic Avenue
        Boston, MA  02110
        (617) 223-8061

---

[6] See 18 U.S.C. §3585(b).

<u>CERTIFICATE OF SERVICE</u>

    I, Syrie D. Fried, do hereby certify that this memorandum has been filed electronically and that it will be served electronically to registered ECF participants as identified on the Notice of Electronic Filing (NEF) on September 4, 2008.

                                               /s/ Syrie D. Fried