1          UNITED STATES DISTRICT COURT

2            DISTRICT OF MASSACHUSETTS

3

------------------------------x

4

UNITED STATES OF AMERICA      :   DOCKET NUMBER CR-08-10036

5

            versus             :   UNITED STATES COURTHOUSE

6

WINSTON McGHEE                :   BOSTON, MASSACHUSETTS

7

------------------------------x

8

9                SEPTEMBER 5, 2008

10

11                 9:00 a.m.

12          TRANSCRIPT OF SENTENCING HEARING

13

BEFORE:  THE HONORABLE DOUGLAS P. WOODLOCK
14          UNITED STATES DISTRICT JUDGE

15

16

17

18            **OFFICIAL COURT REPORTER**

19

20       **DIANE M. MOLAS, RPR, DE CSR, AND NJ CCR**
          **OFFICIAL COURT REPORTER**
         **UNITED STATES DISTRICT COURT - DISTRICT OF MASSACHUSETTS**
21                 **ONE COURTHOUSE WAY**
         **THIRD FLOOR - COURTROOM 1 - SUITE 3200**
22                 **BOSTON, MA 02210**
            **TELEPHONE: (267) 977-2909**
23          **E-MAIL:  Dmolas1@aol.com**

24

         PROCEEDINGS REPORTED USING MACHINE STENOGRAPHY.
25   TRANSCRIPT PRODUCED EMPLOYING COMPUTER-AIDED TECHNOLOGY.

```
 1   APPEARANCES:

 2         ATTORNEY FOR THE UNITED STATES OF AMERICA:

 3             MICHAEL J. SULLIVAN, ESQUIRE
               UNITED STATES ATTORNEY
 4             UNITED STATES DEPARTMENT OF JUSTICE
               UNITED STATES ATTORNEY'S OFFICE
 5             DISTRICT OF MASSACHUSETTS
               ONE COURTHOUSE WAY
 6             SUITE 9200
               BOSTON, MA 02210
 7             TELEPHONE: (617) 748-3800
               E-MAIL:  Timothy.e.moran@usdoj.gov
 8
                   BY:  TIMOTHY MORAN, ESQUIRE
 9                      ASSISTANT UNITED STATES ATTORNEY

10
           ATTORNEY FOR THE DEFENDANT, WINSTON McGHEE:
11
               FEDERAL PUBLIC DEFENDER OFFICE, MASSACHUSETTS
12             408 ATLANTIC AVENUE
               THIRD FLOOR
13             BOSTON, MA 02210
               TELEPHONE: (617) 223-8061
14             E-MAIL:  syrie_fried@fd.org
               FAX:  (617)223-8080
15
                   BY:  SYRIE FRIED, ESQUIRE
16                      ASSISTANT FEDERAL DEFENDER

17
               ALSO PRESENT:  LISA PAIVA
18                            U. S. PROBATION OFFICER

19
     OFFICIAL COURT REPORTER:
20
               DIANE M. MOLAS, RPR, DE CSR, and NJ CCR
21             OFFICIAL COURT REPORTER
               UNITED STATES DISTRICT COURT - DISTRICT OF MASSACHUSETTS
22             ONE COURTHOUSE WAY
               THIRD FLOOR - COURTROOM 1 - SUITE 3200
23             BOSTON, MA 02210
               TELEPHONE: (267) 977-2909
24             E-MAIL:  Dmolas1@aol.com

25                            -  -  -
```

1              P R O C E E D I N G S

2              SENTENCING HEARING

3          THE DEPUTY CLERK:  All rise.

4          This Honorable Court is now in session.

5          You may be seated.

6          Calling the case, Criminal Action 08-10036, the

7   United States versus Winston McGhee.

8          THE COURT:  Well, I want to focus first on the

9   question of applicable Guidelines, and I understand, from the

10  defendant's submission, filed yesterday evening, that there

11  were -- the defendant doesn't dispute the Guideline

12  calculations.

13         There are some arguments about how I should treat

14  things like brandishing, and so on, but the Guideline

15  calculations themselves are not disputed.

16         MS. FRIED:  That's right.

17         From our perspective, we see that the Guideline

18  calculation, as done by the Probation Department, as being

19  pretty directed, just pretty direct.

20         THE COURT:  Right.

21         MS. FRIED:  There is simply the question of drug

22  quantity.

23         We agree, do not believe he's a Career Offender,

24  and, therefore, that whole issue is off the table, from our

25  perspective, and that it's simply a question of -- and I don't

1  dispute -- as I said in my memorandum, I don't think I can

2  carry the burden under the 2B1.1B1 of disproving sufficiently

3  under the developed case law, the enhancement relating to the

4  knife.

5             THE COURT:  Right.

6             MS. FRIED:  So, yes, that's correct.

7             THE COURT:  So let me just turn to the Government

8  briefly, because I want to frame the issues if I can:  The

9  Government's claim that the Youthful Offender indictment

10  constitutes adult conviction has not been developed in the

11  First Circuit, as I understand it, nor, frankly, has it in the

12  SJC.

13            MR. MORAN:  No, Your Honor, it has not been

14  framed -- there's no First Circuit case that I can find.

15            The only thing that I -- I cited

16  Peralto (phonetic), which did not deal with the issue.

17            THE COURT:  Right.

18            MR. MORAN:  And the SJC, while using the Youthful

19  Offender conviction as a predicate under their own statute,

20  has never addressed it under the federal Guidelines, so this

21  is a -- as far as I can tell from my research, this is a

22  question of first impression for Your Honor.

23            THE COURT:  Why would I not certify the question to

24  the SJC?

25            The SJC is the body that would express the view

1  whether or not this constitutes an adult conviction.  It's a

2  matter of State law.

3        Ordinarily, in the Guidelines, I'm dealing with

4  questions of federal law or federal interpretations of State

5  law.

6        This is; at least, as framed in the Guideline, as I

7  see it, or in the treatment of career offenders, is a question

8  of State law, as to which the highest State court would be the

9  proper body to pronounce it.

10        MR. MORAN:  Your Honor, I believe that the issue is

11  ultimately one of federal law, because it's the application of

12  federal Guidelines, and even if the SJC said -- well,

13  ultimately, the SJC cannot construe the Sentencing Guidelines.

14  It's up to Your Honor and the First Circuit to do that, and I

15  think that's what the Matthews case said, which I cited in

16  Footnote 6 on Page 7 of my memorandum, that the states --

17  quote:  The case states into a broad range of flexibility, in

18  choosing how they will treat those who offend the laws, but

19  they may not dictate how the federal government will vindicate

20  its own interest in punishing those who commit federal crimes.

21        THE COURT:  Well, let's assume the following, that

22  the SJC says that the -- in connection under the

23  Youthful Offender Act of -- what is it, 1996, is that what it

24  is?

25        MR. MORAN:  1996.

1          THE COURT:  '96, excuse me, it was amended -- the

2    SJC says, that is not an adult conviction.

3          I'm free to disregard that?

4          MR. MORAN:  Yes, Your Honor.

5          THE COURT:  And, so, I look at the Guideline that

6    deals with this, and it says:  A conviction for an offense

7    committed -- let me start again.

8          A conviction for an offense is an adult conviction

9    if it is classified as an adult conviction under the laws of

10   the jurisdiction in which the defendant was convicted.

11         Now, I've just given you the hypothetical in which

12   the jurisdiction, or The Court that annunciates the law in the

13   jurisdiction in which the defendant was convicted, says it's

14   not an adult conviction, and you tell me that I can disregard

15   that?

16         MR. MORAN:  Well, Your Honor, strictly speaking, I

17   would say under the strict terms of your hypothetical, yes.

18         THE COURT:  That's what this is.

19         Now, let's stop making it a hypothetical.

20         That's what this is.

21         MR. MORAN:  Under Massachusetts case law,

22   Your Honor, I think that the SJC would call it an adult

23   conviction.

24         THE COURT:  Well, why guess?

25         This is, if the Government wants to press this,

1  this is an issue that I would ordinarily, because it's pretty

2  severe, it goes from a minimum of five years to a minimum of

3  twenty.

4           MR. MORAN:  That's correct, Your Honor.

5           THE COURT:  That's the kind of thing that, it seems

6  to me, I ought not to be speculating about, with respect to

7  the SJC, and I have in mind that one of the Justices of the

8  SJC, a former judge of the Juvenile Court, has written the

9  book on juvenile law --

10          MR. MORAN:  That's right, Your Honor.

11          THE COURT:  -- in this area, that the Government

12  quotes from rather extensively, and so I guess I'm back to

13  this point:  If you want to press it, then, it seems to me

14  that I ought to give very serious consideration to the

15  question of whether or not to certify the issue to the SJC.

16          MR. MORAN:  Your Honor --

17          THE COURT:  I don't know any reason why I

18  shouldn't, actually.

19          MR. MORAN:  I don't mean to be evasive.  I think

20  that the -- I'm not trying to avoid the SJC, because I'm

21  not -- I think that they would reach the same result that I'm

22  asking Your Honor to reach.

23          I think that their case law also suggests that -- I

24  think their case law says that they would classify it as an

25  adult conviction.

1              It's not that I don't think we would --

2              THE COURT:  Would they, if they were reading this

3    and recognizing what the consequences are?

4              I wonder.

5              Ordinarily, the federal courts skirt whatever

6    happens in the State courts, and there's developed a

7    remarkable and sometimes erroneous law, federal law, of what

8    happens in State courts that gets applied over and over again

9    in these Guidelines areas, but this is one that is directly on

10   point, and, frankly, it is devastating if it's read this way,

11   devastating in the sense that the whole shift of the

12   applicable sentence is moved up, ratcheted up, significantly,

13   for the defendant.

14             Now, if that's what we're going to do, in dealing

15   with youthful offender statutes, and I understand the

16   Government's argument, and it's not without force as an

17   intellectual matter, I want the, I think I want, the body

18   discharged with authoritatively interpreting the State law to

19   decide that.

20             Now, it requires me to certify the question to the

21   SJC.

22             I believe that meets the standards, although I

23   would want the parties to have an opportunity to convince me

24   otherwise on it, but I don't feel particularly comfortable

25   saying it's one thing for the Congress to tell me to tie my

1   hands with a minimum mandatory.

2          It's another thing for the Sentencing Commission to

3   tell me to tie my hands because, if they were ever asked, the

4   SJC would tell me my hands were tied.

5          If that's going to happen, I want the SJC to tell

6   me directly.

7          MR. MORAN:  Your Honor, I agree with your argument.

8   This is a serious matter.

9          It does, and we take it very seriously.

10          We thought long and hard before asserting this

11   position, and we think this is a case that warrants, and

12   that's also why I tried to augment the record more than I

13   might otherwise do with the materials from the Massachusetts

14   courts.

15          I think that -- from my view, I think that the SJC

16   would reach a similar position --

17          THE COURT:  I think you said that.

18          The question is:  Do you have any objection to the

19   certification?

20          (Pause.)

21          MR. MORAN:  Your Honor, I have not, in my limited

22   experience, with certifying questions.

23          THE COURT:  So let me put it this way:  I'll give

24   you, because I have another question that requires the same

25   deliberation, I think.

1          I'll give you a week --

2          MR. MORAN:  That would be fine, Your Honor.

3          THE COURT:  -- to consider whether or not to

4   certify the issue to the SJC.

5          This isn't meant to be a kind of veiled or overt

6   threat, but I'll tell you that my view is that I will draw an

7   adverse inference from the Government's failure to agree that

8   the matter should be certified.

9          That simply would indicate to me that the

10  Government is afraid to hear what the SJC has to say, but you

11  can file a response in seven days.

12         Ms. Fried, do you have a view?

13         (A ringing cellular-telephone interruption

14  occurred.)

15         (An off-the-record discussion occurred.)

16         MS. FRIED:  I have to think about it.

17         I understand The Court's reasoning.

18         There's only one thing I want to say about it, and

19  that is, to the extent that the process of litigating this

20  matter in the Supreme Judicial Court, Supreme Judicial Court,

21  takes a lot of time, there is some degree of prejudice that

22  inures to my client.

23         The Court will see from my sentencing position that

24  I think that, because of the issue of dead time that we did,

25  with regard to the homicide prosecution that was abandoned,

1    where he -- I said eighteen months.

2              I believe, actually, if you want to talk about this

3    a little bit more, it's actually closer to nineteen months of

4    dead time that he did on that case.

5              I've asked -- The Court has authority to impose

6    sentence here concurrent with the sentence that he's serving

7    now, which is due to expire sometime in March of 2009,

8    because, of course, the effective date of a federal sentence

9    doesn't start until the date it's imposed, and since he's

10   serving a sentence now, he cannot get any kind of credit,

11   unless the sentence is imposed soon, so he would lose any

12   chance for concurrency.

13             That is my only reservation.

14             THE COURT:  Mm-hmm.

15             MS. FRIED:  That's my only reservation.

16             THE COURT:  Well, you can crystallize that in a

17   week --

18             MS. FRIED:  Alright.

19             THE COURT:  -- with a filing, as well, as to your

20   views and you'll both look, I'm sure, at whether or not the

21   certification rule that the SJC has is met in these

22   circumstances.

23             My sense is that it is, but I haven't given it the

24   kind of careful analysis that I ordinarily do.

25             I frequently get requests in civil cases.  I very

1    rarely honor them.

2            This seems to me to be -- and I've never done it in

3    a criminal case.

4            I believe I've done it in a civil case maybe twice,

5    but this seems to me to be of such seriousness, that I would

6    not proceed to make this interpretation without the insight,

7    if it is available under the certification of the SJC.

8            MS. FRIED:  So, just so I'm clear about what it is

9    you want us to address the next time we come here, it would be

10   the question of whether -- what each side believes about

11   whether or not the question ought to be certified.

12           THE COURT:  Right.

13           MS. FRIED:  Not necessarily the merits of whether

14   it qualifies for certification; is that correct?

15           THE COURT:  Well, you mean, because you can't deal

16   with it -- you can't deal with them separately.

17           The SJC merits is a matter of some significance to

18   the SJC on this, but parties can take the view, I think, that

19   the matter is unresolved in SJC jurisprudence, that it is

20   determinative in the case, without necessarily taking a view

21   about what the merits are on that.

22           MS. FRIED:  Alright.

23           THE COURT:  Now, I'll add one other thing from your

24   perspective, or the perspective perhaps of your office, in

25   addition to Mr. McGhee, which is:  My expectation is that, if

1   the Government prevails on this issue, that it is a matter

2   that we're going to see a great deal of, particularly

3   considering the demographic of offenders that the Government

4   is now prosecuting in this court.

5           MS. FRIED:  Mm-hmm.

6           THE COURT:  We ordinarily, you know, you kind of

7   graduate up into the federal court.

8           If this is included and considering the

9   demographic, then, this will have a substantial effect on a

10  number of defendants, apart from Mr. McGhee, and, so, it may

11  be a matter of concern to the CJA board, as well.

12          MS. FRIED:  Yes.

13          I think it might also be a matter of concern to the

14  Committee for Public Counsel Services.

15          THE COURT:  Right.

16          MS. FRIED:  That leads to another question

17  regarding timing:  A week sounds a little fast.

18          THE COURT:  I'll go back and consider the schedule

19  issue.

20          MS. FRIED:  Because I may be bringing some other

21  people into this, quite frankly.

22          THE COURT:  And I'll consider that in just a

23  moment.

24          MS. FRIED:  Mm-hmm.

25          THE COURT:  But let me turn to --

1          MS. FRIED:  May I be seated?

2          THE COURT:  Please.

3          MS. FRIED:  Okay.

4          THE COURT:  You can also -- let me just deal with

5    the issue of the imposition of the sentence for Mr. McGhee.

6          I would consider having -- making adjustments to

7    Mr. McGhee's sentence that would parallel the consecutive

8    claim that you made.

9          I will consider it.

10         I'm not necessarily going to do it, but I'm going

11   to hold him harmless, as of this date, from making that kind

12   of argument, which I believe I can consider within the

13   Guidelines themselves and otherwise.

14         I should say that, with respect to dead time, I

15   don't think I have the authority to do that, except, perhaps,

16   as a departure matter, and let me, so that you can, perhaps,

17   consider it, I hate to show pride of authorship, but I do have

18   a case on it, called OSES versus the United States.

19         MS. FRIED:  How is that spelled, Your Honor?

20         THE COURT:  O-S-E-S, which is 833 Fed. Supp. 49.

21         It was a case in which a defendant had -- I granted

22   a State habeas corpus petition for him, and vacated the State

23   conviction.

24         He also serendipitously, or maybe he didn't

25   consider it serendipitous, was before me on a federal case,

1  and the question was whether or not I was entitled to give him

2  credit for the dead time that I had created or at least had

3  been created by the allowance of the habeas corpus petition.

4  I ultimately did not.

5          MS. FRIED:  I agree that there is no provision in

6  the statutes for crediting -- I mean, there is no sort of

7  waive-the-law itself.

8          THE COURT:  I think it's more than that.

9          I think it's prohibited.

10          MS. FRIED:  Oh, well, I would think that this would

11  be a matter on which The Court could grant a variance, but --

12          THE COURT:  Perhaps, but, in any event, I just

13  wanted you to be aware that -- it's hard to believe that it

14  was fifteen years ago I thought about this.

15          I hadn't really thought about it since then, so

16  I'll save you at least one step in research to --

17          MS. FRIED:  I appreciate that.

18          THE COURT:  -- direct you to the case.

19          MS. FRIED:  Uh-huh.

20          Alright.

21          Okay.

22          THE COURT:  Now, let me turn to the second issue.

23          The Government has submitted a supplemental

24  Sentencing Memorandum in which it has attached the grand jury

25  minutes of five witnesses in the 2002 murder that Mr. McGhee

1  was charged with, and they say that the critical witness was

2  unable to resolve with the Suffolk County

3  District Attorney's Office some arrangement that would permit

4  his testimony, and, as a consequence, they nol-prossed the

5  murder case.

6          I would never resolve a matter like murder on the

7  basis of grand jury minutes of unidentified witnesses, not

8  subject to examination, but I don't know why the Government

9  can't bring these witnesses in here.

10          Why can't you immunize them, if you really want to

11  have them?

12          If you really want me to do this, and make this

13  determination, then, I want to see percipient witnesses.

14          MR. MORAN:  Your Honor, I deliberated about whether

15  it was appropriate to submit this material, and ultimately, we

16  only got it yesterday afternoon.  I put it before Your Honor

17  for two reasons.

18          The first is, I anticipated the argument that

19  Defense counsel made, regarding whether he should be credited

20  for dead time.

21          I think Your Honor has largely resolved that issue.

22          THE COURT:  Well, maybe.

23          MR. MORAN:  At least, you intimated.

24          THE COURT:  But I'll tell you, with respect to

25  this, this is not meant to be a rejection of the materials,

1    but I'm not going to consider these materials.

2           I wouldn't consider them in any fashion in the

3    absence of percipient witnesses.

4           If the Government wants to press this matter, then,

5    I don't know why they can't have them in here.

6           I'm not exactly sure I understand why the Suffolk

7    County District Attorney couldn't have done the same thing,

8    but I'm not familiar enough with immunity provisions in the

9    State court any longer to know, but I think I know something

10   about immunity provisions in the federal court, and these

11   witnesses are, it seems to me, eligible for immunity if the

12   Government wants to offer them, irrespective of rug-merchant

13   tendencies that, at least, one of the witnesses seems to have

14   had when dealing with the sovereign.

15          So second question to consider is:  Do you want me

16   to consider this?

17          If you want me to consider it, then, we have to

18   have live testimony on it, because, not to make a pun, this is

19   a killer, if this is introduced and if I rely upon it.

20          MR. MORAN:  Your Honor's of course, free to

21   disregard and I appreciate that, and it's, of course,

22   something you will have to make a decision on.

23          We do have the identities of these witnesses.  I

24   redacted them.

25          THE COURT:  Do I know them?

1          So you've got identities.  I don't know who these

2     people are.  I have to evaluate their credibility.

3          MR. MORAN:  I understand that.

4          I only redacted them because I filed this online,

5     and I didn't want it accessible to anybody getting up on a

6     website, like, Who's a Rat?  Or something like that, and

7     that's why I redacted them.

8          THE COURT:  I understand, but I'm just telling you

9     that, in order for me to take these steps that you've asked me

10    to take, I'm going to do it in a fashion that I think is

11    procedurally correct, and, if the Government doesn't, for

12    whatever reason, there may be a variety of reasons why they

13    don't want to press this.

14         Then, if they don't, then, I won't.

15         But, on the basis of the Government's Supplemental

16    Sentencing Memorandum, which I've read, and I've read the

17    materials, I would disregard it, unless there was an

18    opportunity to have witnesses or such witnesses as you choose

19    to rely upon, here in court.

20         MR. MORAN:  Thank you, Your Honor, and allow me to

21    be more clear about the second purpose for which I offered it,

22    which is, we are not asking Your Honor to sentence this

23    defendant for a murder.

24         Of course, that would be inappropriate, because

25    that case was before the Superior Court and the Commonwealth

1  didn't pursue it, and we're not suggesting that any --

2          THE COURT:  But you want me to consider it; don't

3  you?

4          MR. MORAN:  Yes, I ask you to consider it.

5          THE COURT:  If it gets into the Guidelines, you'll

6  want me to consider it within the Guidelines or, in fact,

7  departing upward.

8          MR. MORAN:  That's correct, Your Honor.

9          THE COURT:  So that this is no longer charged

10 conduct, as to which there has never been a resolution,

11 suggests to me that I wouldn't otherwise consider it in any

12 fashion.

13         If the Government wants me to consider it, there is

14 a mechanism to do that.

15         Of course, I'll permit the defendant to respond in

16 kind on that, but it can't be put before me without me telling

17 you what I will do with it, one way or the other.

18         What I will do with it, if nothing else happens, is

19 I will disregard it --

20         MR. MORAN:  I understand, Your Honor.

21         THE COURT:  -- entirely for any other purposes.

22         MR. MORAN:  I understand.

23         As a matter of scheduling, assuming that the -- I

24 mean, we've got two possibilities:  One is that this case is

25 sent to the SJC for their input, in which case, I presume

1    Your Honor would not conduct the formal sentencing hearing

2    until after the SJC would answer the question.

3              THE COURT:  What I want to try and do, and what I'm

4    trying to do now, is find out what are the loose ends.

5              From the defendant's point of view, he is --

6    doesn't contest the Presentence Report calculation.

7              From the Government's point of view, I understand

8    there is a contest, and it's a contest over career criminal.

9              MR. MORAN:  Yes.

10             THE COURT:  But nothing else.

11             MR. MORAN:  That's correct, Your Honor.

12             THE COURT:  But I do see on the horizon, see that

13   the Government wanted me to think about grand jury minutes,

14   which I won't, unless it's more fully developed, and I'm

15   affording a period of time to think about the SJC issue.

16             Now, if what you're saying is it's not going to be

17   worth it to us to out the witness or go through the process of

18   potentially trying a murder case here, until we know what the

19   SJC thinks about this, I understand that, and, certainly, I'm

20   not going to resolve the matter fully until I can make a

21   proper determination in respect of career criminal.

22             But, if the Government's prepared to go forward --

23   and, of course, I haven't heard from Ms. Fried yet -- but, if

24   the Government's prepared to go forward on the subsidiary

25   matter, not subsidiary matter, the ancillary matter of the

1   murder, I would join the time period that we're waiting for

2   the SJC, if that's what we end up doing, and conduct a hearing

3   at that point.

4            MR. MORAN:  My preference would be, Your Honor, as

5   you suggested first, to see what the SJC says before we go

6   forward with the murder evidence.

7            If you -- but, if -- I can also appreciate the

8   defendant's argument to move as quickly as possible, within

9   the boundaries that we are constrained by.

10           If Your Honor would prefer to go forward with any

11  evidentiary hearing that's necessary, we could do that.

12           I guess I would just need some time, in order to

13  locate the witnesses, that's all.

14           THE COURT:  Well, I guess what I'm going to be

15  asking you right now is for the Government's position about

16  whether or not it wants to proceed on this issue, not, right

17  now, but --

18           MR. MORAN:  I can put that in the same file,

19  Your Honor.

20           THE COURT:  Right.

21           That's my view, with respect to it.

22           MS. FRIED:  My view on that, on this murder

23  business, of course, is that it's objectionable and we should

24  not proceed on it.

25           I understand the process that The Court is

1    setting -- is thinking about setting up; that is, litigating

2    it.

3              I see, really, if this were an actual -- if we were

4    in a trial posture, I really see sort of a 403 problem with

5    this.

6              THE COURT:  That's certainly not in sentencing.

7              The stuff of sentencing is 403, and it's a mirror

8    image lack of other bad acts.

9              MS. FRIED:  Well, here's what I see with this:

10   Granted, this is sort of new ground for me, but I will say

11   that the prospect of trying -- of litigating, really, a murder

12   case here, is ancillary to a sentencing proceeding, where my

13   client was represented by other counsel for a number of years,

14   presents -- I mean, aside from what I think is sort of the

15   unfairness or lack of relevance of it, where my client was

16   sitting in jail four years while this case was pending before

17   it was nol-pros, I mean, even leaving that aside, for a

18   minute, I would think, for example, it would be appropriate if

19   such a mini-trial is going to be conducted here, that it be

20   conducted by the lawyer who represented him in that case.

21             THE COURT:  I think you're right, and I think,

22   under the circumstances, I would appoint that lawyer for that

23   purpose.

24             MS. FRIED:  Yeah.

25             Just a minute.

1          I think my client wants to address you, as well, if

2   The Court will hear him.

3          THE COURT:  Of course, although I think he would be

4   well advised to receive advice of counsel before he makes a

5   statement in open court.

6          MS. FRIED:  And I would like a chance to talk with

7   him before he addresses you --

8          THE COURT:  Right.

9          MS. FRIED:  -- if he wishes to pursue that.

10          There are also other issues that need to be

11   discussed, like what burdens of proof we're talking about,

12   what kind of Discovery we're talking about, all these things.

13   We're talking about litigating a murder case.

14          I've tried murder cases; not in a while, but I

15   have, and it's not that I can't try a murder case, but this

16   strikes me as bringing -- importing, sort of, a boatload of

17   problems.

18          THE COURT:  Well --

19          MS. FRIED:  Into --

20          THE COURT:  Don't assume --

21          MS. FRIED:  -- an 8-gram drug case.

22          THE COURT:  Don't assume I don't understand that,

23   but, if a party makes a -- develops an initiative, I'm not

24   going to entirely disregard it.

25          They're entitled to raise this, other bad acts or

1  the history of the defendant is relevant for purposes of

2  sentencing.

3          Ordinarily, people don't do that, but it's not

4  without cost to make a filing, such as the Government made,

5  and it introduces a very serious matter.  I've indicated that

6  I'm not going to consider it on the papers --

7          MS. FRIED:  Mm-hmm.

8          THE COURT:  -- in any fashion, and, so, I'm telling

9  the Government what they have to do, and, if they really want

10 to press this, I consider it to be highly relevant for

11 purposes of sentencing, and I will consider it, but how we

12 consider it, what the burden of proof is, I mean, ordinarily,

13 the burden of proof is by a preponderance.

14         If that doesn't strike people as passing strange, I

15 don't know what will, but that's what the standard of proof is

16 now.

17         MS. FRIED:  I understand we're not going to resolve

18 all these questions today, either.

19         THE COURT:  That's right.

20         MS. FRIED:  Procedurally, how would The Court like

21 the Defense to proceed?

22         I understand the Defense has to file something in

23 which it states its intention.

24         THE COURT:  I was going to get to the question of

25 scheduling later.

1                 MS. FRIED:  Okay.

2                 THE COURT:  I understand from Mr. Moran that a week

3        is not too long a period of time -- too short a period of time

4        to get this resolved.

5                 MR. MORAN:  I think so, Your Honor, although I can

6        never totally anticipate what I'm going to find, once I start

7        looking into this --

8                 THE COURT:  Mm-hmm.

9                 MR. MORAN:  -- so if it appears --

10                THE COURT:  And what you're going to hear once you

11       start raising with your superiors and your colleagues in the

12       Suffolk county District Attorney's Office --

13                MR. MORAN:  Yes.

14                THE COURT:  -- when you raise what the judge has

15       raised?

16                MR. MORAN:  Yes, that's correct, Your Honor, and,

17       if it's true that I have opened a larger hornet's nest than I

18       expected --

19                THE COURT:  What do you want for time?

20                Two weeks enough?

21                MR. MORAN:  Two weeks, I think, Your Honor, would

22       be better.  Thank you.

23                THE COURT:  So you'll get back to me no later than

24       two weeks.

25                MR. MORAN:  Thank you, Your Honor.

1          THE COURT:  Which means --

2          MS. FRIED:  That's the Nineteenth.

3          THE COURT:  You're right, yep, the Nineteenth, so

4    what do you want to do to respond, although, obviously, you're

5    going to chat with people before, then.

6          Ms. Fried?

7          MS. FRIED:  I think, it would seem to me that there

8    is not too much, although I might revisit this, but there is

9    not too much that's incumbent on me to say about the murder.

10         THE COURT:  Mm-hmm.

11         MS. FRIED:  Or whether a hearing should be held,

12   other than for us to have a discussion about how we're going

13   to do it and what rules we're going to put in place.

14         THE COURT:  That is not something to be resolved,

15   even when the Government says that.

16         I think we'll have to go through that, but I do

17   think you might contact people at CPCS about this.

18         MS. FRIED:  Well, that's right, and I know -- I

19   know who represented Mr. McGhee on that matter in the State,

20   and I think it may be appropriate to -- perhaps, The Court

21   needs to know his name, because I do think it makes sense for

22   him to be in on it, if it turns out we go down this road.

23         THE COURT:  Sure.

24         I agree, and, as I said, my initial disposition is

25   to say --

1          MS. FRIED:  I mean, assuming Mr. McGhee wants to be

2    represented by that lawyer for that purpose.

3          THE COURT:  Sure.

4          But the question of representation, to the degree

5    it's, you know, a concern about resources and compensation, is

6    one, I think, can be encompassed by the CJA.

7          I can understand why, in the first instances,

8    consideration should be given to his previous counsel in the

9    State court.

10          That's not to displace you, but just a recognition

11    that that party with that lawyer would be the most familiar

12    with the case.

13          MS. FRIED:  Alright.

14          THE COURT:  But I'll deal with the question of

15    representation at a later point.

16          MS. FRIED:  Alright; so, with regard to the other

17    point about the certification question.

18          THE COURT:  Mm-hmm.

19          MS. FRIED:  I would ask The Court to give me one to

20    two weeks after their response to --

21          THE COURT:  Sure.

22          I'm going to give you one, not two.

23          MS. FRIED:  (Laughter.)

24          THE COURT:  And, so, that's September 26.

25          MS. FRIED:  Alright.

1          THE COURT:  And, you know, it's really directed in

2    two ways:  One, is it available; that is, is certification

3    available under these circumstances?

4          I believe it is, but, as I said, I've not looked at

5    it as carefully as I will when it comes to the point of

6    being -- of doing this, but my gut response is I want to hear

7    what the SJC has to say about something like this.

8          The second is the Prudential dimension to it.  I've

9    shown my hand on the Prudential dimension from my perspective,

10   but I'll afford you the opportunity to attempt to, both

11   parties, attempt to persuade me that I ought to just do it

12   myself and not bring the SJC into this process.

13          MS. FRIED:  Mm-hmm.

14          THE COURT:  On the question of murder, though,

15   anything that the -- anything that you want to offer at that

16   time might be helpful to incorporate, having in mind, of

17   course, we're not going to set up any structure for deciding

18   this as a murder case until we know whether the Government is

19   now of the view that I should proceed with it.

20          MS. FRIED:  Now, before we recess, I don't know if

21   there is other business, I would like a chance to talk to

22   Mr. McGhee.

23          THE COURT:  Right.

24          MS. FRIED:  I can tell he wants to address you, and

25   I --

1          THE COURT:  Do you want to take a recess, or do you

2   want --

3          MS. FRIED:  Could we?

4          Could we have five minutes --

5          THE COURT:  Sure.

6          MS. FRIED:  -- so that I can speak with him?

7          THE COURT:  Yep.

8          Take five minutes, and, if you want to talk to him

9   in the Lockup, that's fine.

10          MS. FRIED:  Okay.

11          THE DEPUTY CLERK:  All rise.

12          (A short recess was taken.)

13          THE DEPUTY CLERK:  All rise.

14          This Honorable Court is back in session.

15          You may be seated.

16          THE COURT:  Ms. Fried?

17          MS. FRIED:  Your Honor, my client does wish to

18   address The Court.

19          THE COURT:  Alright.

20          MS. FRIED:  We discussed it.

21          THE COURT:  If you could put the microphone closer.

22          (Pause.)

23          THE DEFENDANT:  Good morning, Your Honor.

24          THE COURT:  Good morning.

25          THE DEFENDANT:  Sorry.

1          I'm kinda nervous, because, this date, I been

2    waiting to say something since 2002, when I was first charged

3    with it.

4          Your Honor, I seen this last night.

5          We brought this before you about witness, saying,

6    Your Honor, the way they put this before you today was in a

7    way that I think is to manipulate you, manipulate your

8    thinking, as to this witness.

9          They dismissed it, because this witness wanted some

10   help from them that they wouldn't give them from other

11   charges.

12         That wasn't what it was about, Your Honor.

13         Over the course of the year that I sat in jail for

14   this charge and continued to tell my -- I'm innocent of this

15   charge.

16         Evidence came forward, Your Honor.

17         Other people got locked up, charged with crimes.

18         Came forward, gave statements, and different

19   things, and it pointed to another person as the perpetrator,

20   Your Honor.

21         One of the Grand Jury statements that he presented

22   to you was from a witness that gave an affidavit in this case

23   that I have today that told she did pick my picture out of a

24   lineup, but she said she picked the picture most likely to the

25   shooter, because she was afraid, and she only gave this

1   affidavit after she learned that the perpetrator that she

2   picked in this Affidavit was pointed out, was locked up for

3   another murder and was away and wouldn't be able to get at

4   her, and this witness that they used here, that says he

5   wanted -- he wanted favorable treatment and that's why he

6   didn't come in, family members of him came forward, due -- due

7   to the DA's Homicide detectives going to visit the family,

8   saying that this person told 'em that he wasn't sure if it was

9   me that committed this crime, that he didn't actually see what

10  happened.

11          He was in the vicinity, but he heard I was in the

12  vicinity at this time, and he believed it was me, but he never

13  actually seen.

14          These are things that other witnesses came forward,

15  pointed to the same person.

16          This lady gave an affidavit about -- about being

17  the perpetrator, and these are separate people.

18          Your Honor, through all these years, I -- I -- I --

19  when I first was charged with this case, I got violated for my

20  probation.

21          I was on probation.  I was doing good.

22          I got violated.  I got two years.

23          I would have been sent to a minimum security.

24          I would have been able to get drug treatment and

25  all that, but I wasn't, because I had this other case.

1          I was sent to Souza-Baranowski, a Level 6 super-max

2    security.

3          Your Honor, the whole time I was there, I

4    proclaimed to my lawyer my innocence; you know, I asked him

5    about polygraph tests, which he said it doesn't hold no weight

6    in the State court as admissibility.

7          I did -- I was fortunate to get a job in the legal

8    library, and I studied and I put forth motions, and stuff like

9    that, and I just wanted to address you today to say that.

10         The way they put this before you to say this, and

11   even with you talking, your own intelligence told you that it

12   wasn't -- this is not all that it was, from what I take from

13   it, and that's not all it was.

14         When they nol-prossed my case, I didn't even go

15   into court.  They sent me right out the back door.

16         I told my lawyer:  I wanted my trial.  I wanted to

17   prove my innocence.

18         To this day, I still want to prove my innocence.

19         I did a lotta things in Juvenile, but this was a

20   crime I never committed, I never committed, and, if you look

21   in my juvenile record, yeah, I got crimes, but those crimes

22   didn't go to trial.  I know my wrong in those crimes, and I

23   accepted it, when it came down to it, because I know I was

24   wrong.

25         Now, this case, Your Honor, if we went to trial,

1    you seen the evidence.  I -- I -- I was wrong.

2           I tell you that, I was wrong, and the only reason

3    this came all the way to trial and I didn't accept my

4    responsibilities was because this Murder case is the backbone

5    of this whole -- of this case here, even being presented

6    before you.

7           This was a State case.  It was selected.

8           The prosecution picked this case up because of

9    this -- because of this murder case, and that's why I didn't

10   accept responsibility, because I know this was on the back

11   burner of something I didn't do, of something I've been

12   fighting for four years, that I didn't commit that crime, so I

13   know that this harsh punishment that they were seeking, over

14   what I would have gotten in State court, was to justify some

15   time for this crime.

16          So I never took it, but I tell you, Your Honor, I

17   accept responsibility in this crime for what I did.

18          I know I was wrong for possessing drugs, I know

19   that.  I admit to that, but I just wanted to address you

20   today, so I can at least get my word, saying you can

21   understand my word whether you take into consideration whether

22   you put in, or not.

23          Just so you know it's more than just what this

24   says, because this is -- this is not accurate.

25          THE COURT:  Well, I appreciate the comments,

1    Mr. McGhee, and you've, I think, identified what is a matter

2    of concern for me, which is to be presented with materials

3    like the Grand Jury materials and to be asked to act on them

4    in some fashion, either increasing your sentence here or using

5    it as a way of evaluating the credibility of other claims that

6    are made, and I'm not going to do it, unless there is

7    developed a more complete process for doing it.

8             That's why I've raised the issue with the

9    Government.

10            That's why I'm asking for a further briefing on

11   the -- on the question, so we'll go from here, see what the

12   parties wish to do in pressing their several claims.

13            I've made clear, I think, that my view is that, if

14   the Government wants to raise it, they're going to have to

15   proceed in a particular way.

16            Whether they're going to do that, or not is really

17   up to them.

18            The only consequence is those initiatives will not

19   be considered if they don't proceed in a particular way, so

20   anything further?

21            MR. MORAN:  Not from the Government, Your Honor.

22            THE COURT:  We don't have a particular date.

23            I'll review the materials and see where we go from

24   there.

25            MS. FRIED:  So we'll just submit and hear back from

1  you.

2          THE COURT:  Yes.

3          Right.

4          MS. FRIED:  Alright.

5          THE COURT:  We're in recess.

6          THE DEPUTY CLERK:  All rise.

7                    -  -  -

8          (The proceedings were concluded.)

9                    -  -  -

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

<u>I N D E X</u>

<u>PAGE</u>

Hearing                                             3

-    -    -

1

                    I N D E X
                    (CONTINUED)

2

3                  E X H I B I T S

4

5          (NO EXHIBITS WERE MARKED.)

6

7

8                    -   -   -

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

## C E R T I F I C A T I O N

I, DIANE M. MOLAS, a Registered Professional Reporter (RPR), a Certified Shorthand Reporter (CSR) in the State of Delaware, a Certified Court Reporter (CCR) in the State of New Jersey, and a Notary Public in the Commonwealth of Pennsylvania, do hereby certify that the foregoing is a true and accurate transcript of the proceedings reported by me, on September 5, 2008, and that I am neither counsel, nor kin, to any party or participant in said action, nor am I interested in the outcome thereof.

_____

Diane M. Molas, RPR, DE CSR, and NJ CCR
DE Certification Number 208-RPR
NJ Certification Number 30XI00228400

-   -   -

*(The foregoing certification of this transcript does not apply to any reproduction of the same by any means, unless under the DIRECT CONTROL AND/OR SUPERVISION of the Certifying Court Reporter herself.  THE COURT REPORTER'S CERTIFICATION NEVER APPEARS AS A PHOTOCOPIED SIGNATURE.)*

-   -   -