1           UNITED STATES DISTRICT COURT

2           DISTRICT OF MASSACHUSETTS

3

-----------------------------x

4

UNITED STATES OF AMERICA    :  DOCKET NUMBER CR-08-10036

5

       versus         :  UNITED STATES COURTHOUSE

6

WINSTON McGHEE           :  BOSTON, MASSACHUSETTS

7

-----------------------------x

8

9                MARCH 3, 2009

10

11                 10:30 a.m.

12          TRANSCRIPT OF SENTENCING HEARING

13

BEFORE:  THE HONORABLE DOUGLAS P. WOODLOCK

14          UNITED STATES DISTRICT JUDGE

15

16

17

18            **OFFICIAL COURT REPORTER**

19

20   **DIANE M. MOLAS, RPR, DE CSR, AND NJ CCR**
             **OFFICIAL COURT REPORTER**
  **UNITED STATES DISTRICT COURT - DISTRICT OF MASSACHUSETTS**

21             **ONE COURTHOUSE WAY**
    **THIRD FLOOR - COURTROOM 1 - SUITE 3200**

22             **BOSTON, MA 02210**
       **TELEPHONE: (267) 977-2909**

23         **E-MAIL:  Dmolas1@aol.com**

24

     PROCEEDINGS REPORTED USING MACHINE STENOGRAPHY.

25  TRANSCRIPT PRODUCED EMPLOYING COMPUTER-AIDED TECHNOLOGY.

1   APPEARANCES:

2       ATTORNEY FOR THE UNITED STATES OF AMERICA:

3           MICHAEL J. SULLIVAN, ESQUIRE
            UNITED STATES ATTORNEY
4           UNITED STATES DEPARTMENT OF JUSTICE
            UNITED STATES ATTORNEY'S OFFICE
5           DISTRICT OF MASSACHUSETTS
            ONE COURTHOUSE WAY
6           SUITE 9200
            BOSTON, MA 02210
7           TELEPHONE: (617) 748-3800
            E-MAIL:  Timothy.e.moran@usdoj.gov

8

9               BY:  TIMOTHY MORAN, ESQUIRE
                     ASSISTANT UNITED STATES ATTORNEY

10

11      ATTORNEY FOR THE DEFENDANT, WINSTON McGHEE:

12          FEDERAL PUBLIC DEFENDER OFFICE, MASSACHUSETTS
            408 ATLANTIC AVENUE
            THIRD FLOOR
13          BOSTON, MA 02210
            TELEPHONE: (617) 223-8061
14          E-MAIL:  syrie_fried@fd.org
            FAX:  (617)223-8080

15

16              BY:  SYRIE FRIED, ESQUIRE
                     ASSISTANT FEDERAL DEFENDER

17

18          ALSO PRESENT:  LISA PAIVA
                           U. S. PROBATION OFFICER

19

    **OFFICIAL COURT REPORTER:**
20

21          **DIANE M. MOLAS, RPR, DE CSR, and NJ CCR**
            **OFFICIAL COURT REPORTER**
            **UNITED STATES DISTRICT COURT - DISTRICT OF MASSACHUSETTS**
22          **ONE COURTHOUSE WAY**
            **THIRD FLOOR - COURTROOM 1 - SUITE 3200**
23          **BOSTON, MA 02210**
            **TELEPHONE: (267) 977-2909**
24          **E-MAIL:  Dmolas1@aol.com**

25                          -  -  -

P R O C E E D I N G S

SENTENCING HEARING

1

2

3          THE DEPUTY CLERK:  All rise.

4          This Honorable Court is now in session.

5          You may be seated.

6          This is the matter of the

7   United States versus Winston McGhee, Criminal Action 08-10036.

8          THE COURT:  Well, I have received memoranda from

9   the Probation Department and from both the Government and the

10  defendant, with respect to, what we'll call, the dead time

11  issue; that is, the time period for which Mr. McGhee was in

12  custody for no other reason than in the pendency of the murder

13  charge that was never prosecuted fully.

14          It's apparent to me, as it's apparent to the

15  parties, that it's very difficult to fine-tune precisely what

16  the dead time is, but it seems to me that a fair way of

17  treating it is to say that I will recognize twenty-four months

18  of dead time here.

19          That seems to me to be within the scope of what the

20  parties have presented to me or Probation has presented to me.

21          Now, in light of that, Mr. Moran, does the

22  Government have something further that they want to say, with

23  respect to the sentence I should impose?

24          I think that clarifies all the remaining issues.

25          MR. MORAN:  I think so, Your Honor, unless you

1    would like me to address anything further.

2              My understanding of this hearing was merely to

3    address, as you call it, the dead-time issue.

4              I think that's settled, unless you'd like to hear

5    from me further.

6              THE COURT:  No.

7              This was extended for a period of time for various

8    reasons, and I think I would benefit from even repetition of

9    the positions of the parties before I actually impose

10   sentence.

11             MR. MORAN:  Yes, Your Honor.

12             As you recall, the Government had requested a

13   Guideline sentence, and we discussed that at length, why we

14   thought that was appropriate.

15             Our view is that this was not a run-of-the-mill,

16   crack-cocaine case, in spite of the relatively lesser amount

17   for a federal case that this involved, largely because of the

18   planning it involved and the indication that it gave the

19   Government that this was intended to be a long-term course of

20   action, but, more importantly to the Government, we felt that

21   a Guideline sentence was appropriate because of this

22   defendant's violent and dangerous background, without relying,

23   in any way, on the murder charge that was dismissed by the

24   Commonwealth.

25             Even without regard to both allegations, we feel

1   that the defendant's background is still reflective of a great

2   deal of violence and criminal activity from a very young age,

3   and, while he has, unfortunately, had to spend a great deal of

4   time in institutions, it's the Government's view that most of

5   that was as a result of actions that he took himself, as well

6   as the behavior that he's shown, that he had been given the

7   opportunity to be placed in his home or in less institutional

8   settings, and it was his own choices; specifically, his own

9   decision to become involved in further criminal activity that

10  resulted in additional institutions, and the Government is

11  most struck in this case by the fact that, after being

12  released for, approximately, thirty days or less, from the

13  pretrial confinement, he had then reoffended in this case,

14  and, basically, once back on the street, immediately went back

15  to criminal activity.

16          So, in summary, Your Honor, I don't want to belabor

17  the points that I made previously.

18          That's the Government's position, as to why we

19  argued for a Guideline sentence.

20          And, on the issue with regard to what you're

21  calling, "dead time," the Government is, under the parameters

22  that you set previously, which I understand is any time that's

23  not attributable to a separate judicial act, the Government,

24  under those parameters, I think that the time that you have

25  set forth is correct.

1          As I laid out in my memo, I couldn't find any --

2     while there may have been reasons why he could have been

3     detained by the rule of juvenile probation, I honestly could

4     not find any documentation of that fact, and, in the absence

5     of any documentation, I think Mr. McGhee deserves the benefit

6     of the doubt as to that.

7          So I think that's your -- twenty-four months is a

8     correct determination of that time.

9          Thank you, Your Honor.

10          THE COURT:  Miss Fried?

11          MS. FRIED:  Thank you.

12          Well, to just reiterate a couple of things, before

13     we get to the heart of my recommendation, I just want to

14     reiterate, for the record, our objection to the

15     newly-calculated Guideline Range, because we took a position

16     that this should not be a Career Offender case, and just -- I

17     think in the revised Presentence Report, the two paragraphs

18     that make that calculation are Paragraph 49A and

19     Paragraph 115, and I just want to bring the discussion back

20     around, after saying that objection, because I understand it's

21     been overruled.

22          So, as to try to go back to revisit where we were

23     when we were last in front of The Court, and sort of the

24     baseline that The Court was starting from when we were last

25     here, which was our agreement, that the Guidelines, as

1  calculated, the Career Offender Guideline, is not an

2  appropriate way to frame what would be the correct sentence in

3  this case.

4          I say "correct" loosely, but the correct, under

5  3553A, in terms of how you promote the goals of sentencing.

6          We had a long of discussion about, and The Court

7  said some things, a lot of things the Defense agrees with,

8  about the circumstances that brought Mr. McGhee here and how

9  he was warehoused for a very long time and especially the last

10  two years before his release that led, very quickly, to the

11  offense conduct that landed him here in this courtroom.

12          Mr. McGhee's had a hard life.

13          He's had a -- for a person so young, he's gone

14  through a lot of bad things.

15          I'm not saying he hasn't done bad things, but

16  sometimes it's hard to tease out, you know, where the chicken

17  is and where the egg is, but the way it's all boiled down is

18  that he's -- he's before you here, looking at doing a very

19  long period of time.

20          He has a lot of untreated drug-dependency problems.

21          He has not been given good opportunities to get an

22  education, to get any kind of meaningful vocational training.

23          He was warehoused and not given any programs during

24  this two-year period of pretrial detention and was, basically,

25  just put out on the street.

1              What I'm really trying to say there is:  That whole

2    set of circumstances left him bereft of any kind of a

3    meaningful support system or a good way to sort of get himself

4    back going, and he reverted to the kind of conduct that he had

5    been familiar with before, which is why he ended up getting

6    arrested.

7              I think -- I believe that Mr. McGhee doesn't want

8    to live his life this way.

9              I think he has a -- I think he's angry at himself

10   and at the whole constellation of factors that sort of led him

11   to be here.

12             There's -- but I, also, think he wants to channel

13   that anger into something constructive for himself, so that he

14   doesn't end up spending the rest of his life this way.

15             I had a chance to speak with him for about a

16   half -- well, twenty minutes, or so, before we were in court

17   this morning, and there have been a couple of bad developments

18   that have happened in the last few months since we were last

19   here.

20             A dear relative, one of his grandmothers, died.

21             Two friends, one of whom apparently was here

22   watching the trial and being supportive of him, was shot and

23   killed, within the last three months.

24             He's very depressed about that.

25             His young son just had a birthday, and, of course,

1    he's not there, he's not available to him, not available to be

2    with his son.

3           I think what he's doing is he's sort of fighting

4    off the depressing effects of these developments, and, at the

5    same time, trying to figure out if there's some way that he

6    can turn that depression into motivation for that not to

7    continue, for this horrible cycle not to continue.

8           He'd like to break it, I think.

9           I do not believe that a Guideline sentence is

10   necessary to serve the purposes of sentencing.

11          The Court had said, when we were last here, that it

12   thought this looked like a ten-year case, in terms of just

13   sort of the seriousness of what the offense conduct was and

14   correlating that with my client's criminal history, and, then,

15   it was interested in trying to figure out where to go from

16   there, based on these other factors, one of which was this

17   dead-time issue, so I just want to address that calculation a

18   little bit.

19          One thing I'd like to bring up, at the risk of

20   seeming grasping, but I want to remind The Court of it,

21   anyway, The Court had mentioned, back when we first started

22   this sentencing hearing, in September, its willingness, at

23   least, to hold Mr. McGhee harmless for the time that it took

24   to resolve these complex sentencing issues that arose.

25          I want to remind The Court of that, because it's

1    been almost exactly a six-month period, I think, since that --

2    since this process began.

3            I think our first sentencing date in this case was

4    the first week of September.

5            THE COURT:  What are you asking for?

6            Ms. Fried, I know that a large portion of the time

7    was accommodating your schedule.

8            MS. FRIED:  Well, I guess I'm asking The Court to

9    consider deducting another six months, from the time in

10   September, when we had to deal with the question of whether or

11   not he was going to be treated as an adult, as a

12   Career Offender, this whole certification question that had to

13   be dealt with, and, then, this -- I'm just asking for

14   The Court to consider doing that, to deduct an extra six

15   months off of the two years for the dead-time issue.

16           The other thing that I would want to ask The Court

17   to consider just is whether The Court -- to consider the

18   propriety of my client's untreated mental-health issues and

19   untreated drug use issues as a mitigating circumstance, a

20   3553A factor.

21           THE COURT:  This is an extension of the problem as

22   presented in the State Court, a lack of supervision, the lack

23   of programs.

24           MS. FRIED:  Okay.

25           THE COURT:  That, it seems to me, was -- and has

1  been offered as a shield or justification for what happened

2  and the rapidity with which he engaged in criminal activity.

3           But the argument is, it seems to me, to get him the

4  programs in the federal prison system, not to provide some

5  further mitigation.

6           MS. FRIED:  Well, I certainly agree that -- I mean,

7  we've asked The Court to recommend that he be placed in the --

8  that he participate in the 500-hour program, because I think

9  that he needs that.

10          I don't have anything else to add, on terms of the

11  legal issues.

12          I think my client would like to address you.

13          THE COURT:  Okay.

14          Do you want to make a specific recommendation, or

15  not?

16          MS. FRIED:  Well, I would ask The Court to -- I'd

17  ask The Court to impose a sentence of six-and-a-half years to

18  seven-and-a-half-years in this case.

19          THE COURT:  Okay.

20                          -  -  -

21                        (Pause.)

22                          -  -  -

23          THE COURT:  Mr. McGhee, I'll hear from you, if

24  there's something that you want to say.

25          THE DEFENDANT:  Good morning, Your Honor.

1          Like I said last time, we talked on many occasions

2    during this trial and during all of this, like I said, all I

3    ask for is that you put in the stipulations that I get some

4    help, you know what I mean?

5          That I be able to participate in some programs, and

6    stuff like that.

7          Your Honor, since the last time I talked to you,

8    certain things changed, but the main thing that ain't changed

9    is my willing -- my willingness to try to learn something new

10   and become something new, you know?

11         You got my PSI.  You read about my story.  You know

12   what it is.

13         I didn't grow up with role models of firefighters

14   and cops, and all of that.  I was sent to jail at a young age.

15         The only role model that I really knew was the guy

16   in the Law Library, and I followed him, you know, during my

17   last case.

18         I put a lot of hours and a lot of work to prove my

19   innocence, and it happened, you know, but everybody else, you

20   know, there wasn't no spectrum program, no re-entry programs.

21         I wasn't allowed to participate in those, so

22   everything else, on my dead time, was, you know, Tyrone the

23   Thief, or Jimmy the Killer, or, you know, Rick the Drug

24   Pusher, you know?

25              Those were the stories I heard, and I took heed to

1    'em, but some I didn't take heed to.

2         You know, when I got out, there was no

3    opportunities there for me.

4         Yeah, I wanted a different change, but it wasn't

5    there, you know, and I had certain things I had to take care

6    of, and I went the wrong way.

7         That's not here nor there.

8         I chose the wrong way.  I chose it.

9         I participated in it, and, like I told you, when

10   I'm wrong, I accept my fate.

11        During these last months, Your Honor, I lost my

12   grandmother.  I lost another grandmother that was close to the

13   family.

14        I lost two friends.

15        My little son, he's getting older, you know?

16        My little brother, I tried to talk to him, you

17   know, I begged him:  Let my time be the time for both of us,

18   but now he's in the system, too.

19        That right there kill me the most, you know?

20        Because I never wanted him to do this, and, in a

21   way, I look and I see, like, he mighta idolized, you know, my

22   life, or something like that, and that hurt me.

23        My son, he's three, he's asking for Daddy, he's

24   asking for all of this, and I just don't want to see him grow

25   up and idolize the people with the businesses and all of us

1    that ain't lawyers, that ain't judges, that ain't

2    firefighters.

3            That's getting that money to doing that business or

4    drive, whatever they doing, where they get change the wrong

5    way.

6            I don't want them to idolize that, because, in the

7    end, no matter if they driving for months or years, they're

8    going to pay the price.

9            I understand that, now.

10           It don't matter what I do out there.  If I do it

11   the wrong way, there's a price to pay.

12           Ten years' run, five years' run, two months' run, a

13   month run, once you see when I got out, there's still a price

14   to pay, if you ain't going the right way.

15           I just be trying to get my life in perspective.  I

16   been writing a book.  It's almost done.

17           Sent the first three chapters to a publisher.  They

18   wrote me back with good reports, you know, and, like I told

19   Your Honor, I just -- I just ask for a chance to -- my life,

20   yeah, it could be saved in a way, but I ask for a chance to

21   get back out there for my son, for my brothers, so they can

22   see.

23           If I change, maybe they can look and say:  Man, he

24   was doing this when he was young.  He was doing this then,

25   and, now, he sees another way.

1             Why does he see that way?

2             You know what I mean?

3             Just like I looked and said:  Man, why is he

4    getting all this money selling these drugs?  He's supporting

5    this.  He's buying what I see in these videos.

6             I want them to see hard work can get there, too.

7    Working at a shipping dock, working wherever it is, they can

8    get that, too.

9             You know, I'm not sitting here -- I'm not saying

10   that I ain't been a bad person, because my record shows, at

11   times, I been a bad person, and -- and that's just the facts.

12            I can't sit here and try to con you and tell you,

13   you know, some things happened to me that wasn't in my doing,

14   some things happened to me that was in my doing.

15            That's just the facts of life, you know?

16            You cry Wolf sometimes.  Even when the situation is

17   real, they still believe you, you know what I mean?

18            You know the story.

19            But what I ask you for today, Your Honor, is that I

20   think, even the D. A., I think even in your mind, I think even

21   some people I know in the street mind, is my ability to

22   re-offend or my ability to get in trouble again when I get

23   out.

24            What I ask of you is that you give me a sentence

25   that gives me a chance to rehabilitate, a chance to learn a

1    trade, a chance to further my education of writing and

2    reading, 'cause I took a liking into that, but to get out with

3    an opportunity to see my son when he's seven or eight, when he

4    starts to really pick up who he's idolizing, instead of the

5    little cartoon characters now, the older generation that he's

6    idolizing now, that I can show him the difference, and I ask

7    with that, Your Honor, whatever time you give me to

8    rehabilitate myself, that you also, due to my record of

9    re-offending or getting into trouble when I get out, so I can

10   show you and I can show everybody else that I ain't getting in

11   trouble, I'm asking for a time of House Arrest, with the

12   stipulation that I can go to work and come back home.

13            All I want to do is be there with my son and show

14   him some values, some values that I was never shown, you know,

15   so I ask you today.  I know there's a minimum mandatory.  I

16   know there's a maximum.

17            I just ask you to go low --

18            THE COURT:  I don't understand.

19            There isn't a minimum mandatory here; is there?

20            MS. FRIED:  Five years.

21            MR. MORAN:  Five years, Your Honor.

22            THE COURT:  Okay.

23            THE DEFENDANT:  I ask you for somewhere around that

24   range, Your Honor, that's what I ask for, and I ask, with

25   that, that it be a two-to-three-year House Arrest term that I

1 │ could just work, whatever, cause it doesn't -- it doesn't

2 │ really -- to me, right now, it's not about getting on the

3 │ streets and going here and going there.

4 │        It's just about showing my son, showing my

5 │ brothers, showing that anybody else that idolize me, my two

6 │ friends that died, they got children out there, they got a

7 │ mother, they got people that need help, they're never coming

8 │ home.  I got other people in the system that never coming

9 │ home.

10 │        We ain't getting out, trying to seek revenge for

11 │ their deaths, or revenge for any wrongdoings; is not the way.

12 │        All I can do to show my love to them is prosper and

13 │ maybe be able to take their son to a game and show him some

14 │ guidance, or something like that.

15 │        So I ask that, or their son could come to my house

16 │ and we can read a book, whatever we got to do, but do it the

17 │ right way, show them something that's different from what

18 │ we've been showing them, what we came up to idolize, because I

19 │ see it's not right.

20 │        I see it's not the way, because every -- every --

21 │ everything you do, there's a reaction to it.

22 │        If I get out tomorrow and I rob somebody or I carry

23 │ a gun on my hip, there's a reaction to it.

24 │        There's time, and there's just a reaction that,

25 │ right now in my life, I can't -- I can't take.

1          I can't take not -- being away from my family.

2          I can't take not -- seeing my mama cry, seeing my

3     father, seeing my brother, and I can't take that no more.

4          So whatever it is I gotta do, two jobs, three jobs,

5     business on the Internet, sitting home, write more books, I'm

6     willing to do it.

7          I'm willing to struggle that way than to try to

8     take the easy way out, because I know what the easy way gets

9     you.

10          It gets you relief for a second.  It gets you a

11     couple of thousand for a second, but, at the end, really,

12     you're still going to be calling home, asking your family for

13     twenty dollars to buy some soups and deodorant, so I ask you

14     to go to that low range and give me a chance, because you

15     know, just like I know, my record shows, if I come here again,

16     if I come in any courtroom again, they're just going to house

17     me.

18          I'm just going to be a statistic.  I'm just going

19     to be a number, a W or 038 number, whatever it is.  That's all

20     I'm going to be, if I come before you again.

21          I'd just ask for that, and I ask, like I said, for

22     the chance to, you know, if it's about re-offending, GPS, or

23     whatever it is, House Arrest, just give me the stipulation

24     that I can work, too, and come home, so I can provide for my

25     family.

1          That's what I ask you today, and I thank you for

2     letting me address you.

3          THE COURT:  Thank you.

4          Well, it is appropriate to review the bidding here.

5          We have a Career Offender Guideline of 210 to 262

6     months in prison.

7          I think that the Guideline results from a perfect

8     storm of circumstances that the defendant found himself in

9     and, also, put himself in, and it has an almost hydraulic

10    pressure, creating this very high Guideline.

11         I've tried throughout this case to pare it down to

12    what it really is, not compounding that the Guidelines

13    sometimes generate, but the actual offense and the actual

14    seriousness and culpability of the defendant, given his

15    background.

16         I indicated to the parties before that I thought

17    this was a ten-year case, if that, and I, also, recognize

18    that, in the way in which the defendant functions in the

19    system, has functioned in the system, he was the subject of a

20    substantial period of dead time, defined as time for which he

21    was in prison and there was no adjudication for the Murder

22    Charge, so I start with this rather complex and

23    mechanically-generated Guideline, my own sense of what the

24    proper range should be for this kind of offense by this kind

25    of offender, and the particular recognition, not always

1   appropriate, but I think appropriate here, that a defendant

2   should not simply be put away without some resolution of his

3   case, and he should receive some recognition for the time that

4   he served.

5          Now, that suggests that I have to move outside of

6   the Guideline system, and I do, by reference to the factors in

7   Section 3553.

8          The first is the larger question of the seriousness

9   of the offense, the importance of encouraging respect for the

10  law, the kind of just-desserts issues, and, here, I gave my

11  own view about the seriousness of this offense.

12         It is the case that virtually any drug case can be

13  prosecuted by the Federal Government.

14         It's also the case that, taken alone, this set of

15  drug transactions would not have been in the Federal Court but

16  for, I think, the defendant's past history and prospects, as

17  defined largely by, what I assume were, State considerations

18  of who's an impact player.

19         It is the responsibility of the executive to make

20  those kinds of choices.

21         I think they're within the range of reasonable

22  kinds of prosecutorial choices, but, when we start choosing to

23  prosecute in the Federal Court not the crime, but the

24  individual, the role of The Court, I think, is to bring us

25  back to the core, which is:  People are punished for the

1   crime, in light of their background, and this crime, as I've

2   indicated, is one that ordinarily would be prosecuted in the

3   State Court and would lead to the Draconian Guideline Range

4   that we're talking about here, so I've imported my own views,

5   developed as a result of, I guess it's now, thirty-four years

6   since I served as a law clerk for Judge Murray, from observing

7   what happens in the Federal Court, what the range of sentences

8   really are or should be in the Federal Court, when they're not

9   dictated by some sort of wooden observation of:  How you do

10  the arithmetic for the Guideline Range?

11          I do think it's a serious offense.  I do think that

12  Mr. McGhee was ill-served by the way in which the State system

13  of social control dealt with it, starting as a juvenile and

14  continuing more recently.

15          I have not considered, and won't, the murder

16  allegation.

17          I afforded the Government the opportunity to prove

18  it.

19          For what are and can be a variety of reasons, they

20  chose not pursue that, after consultation with the

21  District Attorney's Office, and, so, I put that off the table,

22  but I do recognize that the defendant's got a background of

23  real violence, so I look at the nature of the offense and I

24  say:  It's a serious offense, and I can recognize it the way

25  Congress has, which is the minimum mandatory, five years, or

1    something more.

2         Certainly, Congress thought that no federal judge

3    ought to be given the flexibility to go below five years on

4    just the crime itself.

5         I turn, then, to the question of general

6    deterrence.  Mr. McGhee had talked about it, in terms of role

7    models or how people generally view those who made some money

8    in the drug trade.

9         One can, of course, say 262 months might take the

10   edge off that, but that, of course, offends against the

11   principle of parsimony; that is, the idea that the sentence

12   should be no more than is necessary to serve the goal, and my

13   view is that somewhere North of the minimum mandatory, but

14   well South of the Guideline, serves the goal of the general

15   deterrence.

16        One of the most enervating things, I think, in

17   Mr. McGhee's community is the sense of arbitrariness that some

18   of the State Court sentences impose and, also, that people

19   just seem to get out without doing very much time for drug

20   kinds of cases.

21        So, then, I turn to the question of specific

22   deterrence, and this is the one that is most bothersome to me,

23   because Mr. McGhee is still a young man.  He has no track

24   record of compliance.

25        I treat as credible what he had to say to me here

1    about his desire to provide a different kind of model for his

2    son and for the sons of -- children of people and his cohorts,

3    and to get on with his life.

4              Nevertheless, it is important that there be some

5    mechanism in sentencing, as well, to protect society, given

6    the kinds of probabilities that might devalue it, and, here,

7    as I said, this is a record that's -- or presents someone

8    who's engaged in violence in the past and finds recourse to

9    the drug trade to be convenient within thirty days of getting

10   out of prison.

11             And, so, that leads me to the fourth major factor,

12   which is, what we call, penological benefit.

13             You know, as I said, I think that the State Courts

14   have not been or the State system has not been particularly

15   helpful to Mr. McGhee.  Mr. McGhee talked about it, and I

16   think he's not incorrect to say that some aspects of it are

17   just warehousing, putting a person in an institution and not

18   doing anything for him, either during the institution or when

19   he gets out.

20             The Federal system is not perfect, by any means,

21   but the Bureau of Prisons and the Probation Office, I think,

22   do a pretty good job of helping offenders who want to help

23   themselves, and, so, crediting what Mr. McGhee says, a period

24   of time, not warehousing, although reflecting the seriousness

25   of the offense, but also providing ways for him to deal with

1   some of the demons in his life and to find ways to develop

2   skills that could lead to job opportunities and ways to

3   successfully advance his life is important.

4           Now, of course, I take into consideration larger

5   questions, like, disparities, and, in disparities, I call on

6   my own personal experience and background in the sentencing of

7   offenders over a long period of time, and a recognition, as I

8   said, at the outset, that this is a kind of perfect storm of

9   Guideline applications that present only a formal, and not a

10  nuanced, understanding of what the crime was and what the role

11  of the offender was, but it would seem to me quite outrageous,

12  having made all of these calculations, then, to say:  For this

13  kind of crime, I'm going to have one of those telephone-number

14  sentences for the defendant.

15          It's wholly disparate from the way in which

16  sentences are imposed, have been imposed, in This Court and

17  courts generally.

18          The Government may pursue these cases of what they

19  perceive, or those who provide them with the cases perceive,

20  to be high-impact players, but, as I said, it's the

21  responsibility of the courts to tailor the sentence more

22  appropriately to the larger purposes, rather than the

23  prosecutorial initiatives that are involved.

24          Having in mind all of those factors, I'm going to

25  impose a sentence of eight years in prison.

1          I will make a number of recommendations.  They are

2    recommendations.  They're not something that I can impose.

3          The first is the 500-hour, residential,

4    drug-treatment program.

5          It's a real drug-treatment program, Mr. McGhee, and

6    it's one that I think you'll benefit from, quite apart from

7    the inducements that are involved, be able to participate in

8    it, but you've got a drug problem of various kinds, and you've

9    got to focus on it in a systematic sort of way.

10         It doesn't work, unless you really want to work at

11   it.

12         I said I thought that you were credible when you

13   told me you did, and I'm acting on that, by making the

14   recommendation which would provide you with that basis.

15         I'm going to also require -- or, I should say,

16   recommend, to the Bureau of Prisons, that you be provided with

17   certain kinds of mental-health treatment.

18         I don't think you have been over your life, and

19   you've had some challenges in that regard.

20         I will make a recommendation that you be designated

21   to a facility within the Northeast, so that you're, at least,

22   as close as can be to your family and those you want to keep

23   in touch with during this time period, but I make a couple of

24   observations.

25         It is important to be involved with your family,

1   with your son, but my experience in this area is that people

2   who stay too involved with the same old folks get themselves

3   involved in the same old trouble, and that's something you

4   have got to avoid, and you have got to think long and hard

5   about getting yourself out of the neighborhood in which you've

6   been living, neighborhoods in which you've been living on, but

7   it's important to have connections, not feel you've been sent

8   off somewhere else, and, so, that's the recommendation I'm

9   going to make.

10          This is a sentence, however, that is consecutive to

11  any sentences that you're now serving.

12          The recognition that I'm giving to this is that it

13  is a separate federal crime for separate federal offenses.

14          I've tailored it substantially to deal with that,

15  but it is to commence, having in mind that there may be

16  periods of Time Served here, but it's to commence after the

17  service of other sentences.

18          I'm going to put you on a period of supervised

19  release for three years.

20          That's the maximum that I can put you on, as far as

21  I can understand.

22          I'll note, as well, that I'm not going to impose a

23  fine, because I don't think you're in a position to pay a

24  fine, and whatever money you have shouldn't be going to pay a

25  fine.

1          It should be going to provide some support for

2     people you care about and are responsible for.

3          There is a $200 special assessment.

4          That's something that I'll order be paid

5     immediately.

6          If it's not paid immediately, it'll be paid

7     according to a payment schedule that involves financial

8     responsibility by the Bureau of Prisons.

9          And, if it hasn't been paid by the time you get out

10    of the Bureau of Prisons, then, it will be paid according to a

11    schedule that will be established by me, after consultation

12    with the Probation Officer, who, in turn, will consult with --

13    evaluate your capabilities.

14         I should add one other point, with respect to the

15    prison sentence, and I will extend it a little bit in the

16    Supervised Release period.

17         I assume that you're going to start working in

18    programs, the kind of programs that help give you education,

19    but also gives you trades, something that people need when

20    they get out, that you will have something to offer, and the

21    prison system provides that opportunity, if you pay attention

22    to it, but, returning to the question of supervised release,

23    you are obligated, within seventy-two hours of your release,

24    to report to the Probation Office in the court of the District

25    in which you were released.

1              You made a suggestion that you would do

2     Home Confinement, and that sort of thing.  I'm not going to do

3     that at the outset.

4              Get out of prison.

5              You go through the Halfway House process of

6     reintegration.

7              I'm assuming that you're ready to get to work on

8     it, get to work on your life in a broader-sort-of sense, and

9     I'm not going to impose that kind of constraint; at least,

10    initially.

11             If there's a problem, you'll be back to me, and,

12    then, we'll talk about those kinds of things, but I'm assuming

13    that you're going to face this problem directly, and I'm not

14    going to put you on GPS, or Home Confinement, or a bracelet,

15    but, of course, I'm expecting you to get to work and expecting

16    you to become a productive member of society when you come

17    out, and, to the degree that there are violations of any of

18    the conditions of supervised release, that will lead to you

19    coming back here, and that's not a good thing, to come back

20    here on violations of supervised release.

21             I will require that the drug-treatment program

22    continue when you get out of prison and go on the supervised

23    release, and, in that connection, I will require that you

24    refrain from any unlawful use of controlled substances, that

25    you submit to, at least, one drug test within fifteen days of

1  your release and, at least, two periodic tests thereafter and

2  not to exceed 104 drug tests per year.

3          This is for your benefit, to keep track of you, but

4  it's part of a larger program of dealing with substance abuse.

5          I will similarly require that you participate in

6  the Mental Health Program; again, a matter of making

7  adjustment fairly.

8          One of the things that's clear to me is that you're

9  released in the State system with no safety net.

10          You probably would have gotten involved in

11  problems, anyway, but I mean to do whatever we can to ensure

12  there's some safety net available for you.

13          You're obligated, obviously, to comply with all the

14  standard conditions of supervised release.

15          You may not commit another federal, state, or local

16  crime.

17          You are prohibited from possessing a firearm or

18  other dangerous weapon.

19          And I believe that those are the full range of

20  conditions, unless there's something else that Probation would

21  suggest, or the Government?

22          U. S. PROBATION OFFICER PAIVA:  No, Your Honor.

23          MR. MORAN:  I have nothing, Your Honor.

24          MS. FRIED:  Nothing to add, Your Honor.

25          THE COURT:  You understand, Mr. McGhee, that you

1   have a right of appeal, and you're going to consult with your

2   counsel about exercising that right of appeal, because the

3   final judgment will now enter, and that brings up all of the

4   issues that arise from trial, pretrial kinds of things.

5           We took a great deal of time here to resolve this

6   for a variety of scheduling reasons.

7           It was more extended than I would have wanted, but

8   I'll say this:  That it's important for all of us.

9           Everybody's involved in the system to try to get it

10   right for you, have in mind all of the several considerations,

11   including your responsibility to pay the price for what you

12   did, and I tried to balance those as best I can, but,

13   ultimately, it's up to you.

14           I listened to you, both the last time, and,

15   particularly, the last time we were here and today, and, as I

16   say, I credit what you have to say, that you really want to do

17   the right thing.

18           That's hard sometimes to do the right thing, under

19   these circumstances, but we've done whatever we can do to

20   ensure that there is some structure that will help you out,

21   and, then, we leave it to you.

22           If it doesn't work out, there's nobody else you can

23   blame but yourself.

24           My sense is it's going to work out, that this is

25   going to and has already given you a sense of what your

1    obligations are, to the larger community, to yourself, and

2    that you fulfill them.

3              That, at least, is my hope here in imposing a

4    sentence.

5              Is there anything further?

6              MS. FRIED:  Could I have just a moment?

7              THE COURT:  Sure.

8                            -   -   -

9              (Ms. Fried conferred with the defendant.)

10                           -   -   -

11             MS. FRIED:  Mr. McGhee would just like to say a

12   word to you, if that's alright.

13             THE COURT:  Alright.

14             THE DEFENDANT:  Your Honor, I want to thank you

15   today.

16             You know, like I said, I'm a person that can take

17   his licks when he does a crime, you know, and what I told you

18   is what I mean.

19             I want to change, and these programs and this stuff

20   you read, I'll follow them.

21             I remember the last time I was here.  You said you

22   visit different jails and you talk to certain people.

23             If you ever come to a jail and you see my name on

24   the roster, you can talk to me, because outta all the judge I

25   ran through in my life, and, as you can see, there's been a

1   couple, you was the first one that says:  I'm gonna help this

2   kid; and, for that, I don't want to turn around and make you

3   look like you should have did something different down the

4   line.

5           I want this judgment, and I want you to look at it,

6   ten years, whatever, down the line, when I start progressing

7   and really showing that I took heed to what you did to me,

8   that you say:  I made the right choice.

9           I just want to say thank you to you.  You know, I

10  have never been an impact player.  I'm just a loyal person to

11  whom I'm loyal to, and my loyalty was to the wrong people.

12          Now, my loyalty's directed in other places, and

13  you'll see how far that go.  I promise you that.

14          I promised my mother that.  I promised my sons and

15  my friends that's no longer here.

16          So, with that, I just thank you, and I hope one day

17  we can look back at this, and we can talk, and I can thank

18  you, again, when I'm successful and I'm beneficial to my

19  society and my family.

20          THE COURT:  Thank you very much.

21          Thank you, Mr. McGhee.

22          The best way to thank me is to do what you said

23  you're going to do.

24          Anything further?

25          MR. MORAN:  Not from the Government.

1          MS. FRIED:  Not from the defendant.

2          THE COURT:  We'll be in recess.

3          THE DEPUTY CLERK:  All rise.

4                         -   -   -

5          (The proceedings were concluded.)

6                         -   -   -

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

<u>I N D E X</u>

<u>PAGE</u>

Hearing                                         3

-   -   -

1

I N D E X
(CONTINUED)

2

3

E X H I B I T S

4

(NO EXHIBITS WERE MARKED.)

5

6

7

–   –   –

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

# C E R T I F I C A T I O N

I, DIANE M. MOLAS, a Registered Professional
Reporter (RPR), a Certified Shorthand Reporter (CSR) in the
States of Delaware and Massachusetts, a
Certified Court Reporter (CCR) in the State of New Jersey, and
a Notary Public in the Commonwealth of Pennsylvania, do hereby
certify that the foregoing is a true and accurate transcript
of the proceedings reported by me, on March 3, 2009, and that
I am neither counsel, nor kin, to any party or participant in
said action, nor am I interested in the outcome thereof.

_____

Diane M. Molas, RPR, DE & MA CSRs, and NJ CCR
DE Certification Number 208-RPR
MA Certification Number 149208
NJ Certification Number 30XI00228400

-   -   -

*(The foregoing certification of this
transcript does not apply to any reproduction of the same by
any means, unless under the DIRECT CONTROL AND/OR SUPERVISION
of the Certifying Court Reporter herself.  THE COURT
REPORTER'S CERTIFICATION NEVER APPEARS AS A PHOTOCOPIED
SIGNATURE.)*

-   -   -